SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

NORTH ATLANTIC OPERATING COMPANY,
INC., AND NATIONAL TOBACCO
COMPANY, L.P.,

                       Plaintiffs,

       - against -

EVERGREEN DISTRIBUTORS, LLC;
DOUGLAS EZRING; NEW LINE FOOD
DISTRIBUTION, INC., HOOKAH PLUS, INC.,
d/b/a HOOKAH PLUS; HUSSEIN HACHEM;
MANHATTAN WHOLESALERS NY CORP.,
d/b/a MANHATTAN WHOLESALERS, INC;
MAJID RASHIDZADA; MAJID HAROON; 23rd
ST. GENERAL MARKET & DELI CORP., d/b/a
GENERAL MARKET & DELI, GOURMET
FOOD MARKET, NEW STAR TOBACCO, INC.,
d/b/a NEW STAR TOBACCO, and JOHN DOES
ONE through TEN, inclusive,

                       Defendants.
-------------------------------------------------------X

Civil Action No.:

**ECF CASE**

**COMPLAINT**

**FILED UNDER SEAL**

**JURY TRIAL DEMANDED**

KORMAN, J.

SCANLON, M.J.

Plaintiff North Atlantic Operating Company, Inc. ("NAOC"), and its affiliated company,

Plaintiff National Tobacco Company, L.P. ("NTC") (together, "North Atlantic"), by and through

their attorneys, as and for their Complaint against Defendants, allege and state as follows:

### NATURE OF THE ACTION

1.     This is an action for: (i) trademark infringement in violation of section 32(I) of the

Lanham Act, 15 U.S.C. § 1114; (ii) false designation of origin and trademark and trade dress

infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) copyright

infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*; (iv) deceptive

acts and practices in violation of New York General Business Law § 349; and (v) unfair

competition in violation of the New York common law.

2.     North Atlantic is a leading seller and distributor of cigarette paper products in the United States, including roll-your-own cigarette paper and related products ("Cigarette Paper Products"). North Atlantic is the exclusive licensee in the United States of the famous ZIG-ZAG® brand Cigarette Paper Products.

3.     North Atlantic is also party to an exclusive distribution agreement concerning the ZIG-ZAG® trademarks and design mark depicting the bearded man (the "Smoking Man Design") (collectively, the "ZIG-ZAG® Trademarks") in connection with the sale and distribution of Cigarette Paper Products in the United States. Since 1997, North Atlantic has continuously used the ZIG-ZAG® Trademarks in connection with ZIG-ZAG® Cigarette Paper Products distributed in the United States.

4.     North Atlantic is also the owner of the federal trademark registration for NORTH ATLANTIC OPERATING COMPANY, INC. and the design displayed on ZIG-ZAG® Cigarette Paper Products (the "NAOC® Trademark").

5.     North Atlantic also owns the copyright registration in the United States for the NAOC and design graphic entitled "North Atlantic Operating Company, Inc." (the "NAOC© Copyright").

6.     For over a decade, North Atlantic has continuously used the NAOC® Trademark in connection with its exclusive distribution of ZIG-ZAG® Cigarette Paper Products and has been the proprietor of all rights, title, and interest in and to the NAOC© Copyright. In addition, North Atlantic has used the NAOC© Copyright in strict conformity with the provisions of the Copyright Act of 1976 and all other laws governing copyrights.

7.     North Atlantic has learned, through statements made to its representatives, documents corroborating those statements, and actual counterfeit product it has obtained, that

Defendants have been unlawfully distributing counterfeit ZIG-ZAG® Cigarette Paper Products, including ZIG-ZAG® 1 ¼ Size French Orange ("ZIG-ZAG® Orange"), which bear exact copies of the ZIG-ZAG® and NAOC® Trademarks and unauthorized, unlicensed reproductions of the NAOC© Copyright that are neither approved by nor distributed by North Atlantic, from locations throughout this judicial district.

8.      As a result of Defendants' unlawful distribution of counterfeit products, North Atlantic has suffered—and, unless enjoined by this Court, will continue to suffer—irreparable harm to the enormous value and goodwill it has amassed in the ZIG-ZAG® and NAOC® Trademarks and in the NAOC© Copyright.  North Atlantic's reputation as the sole and exclusive source of quality ZIG-ZAG® Cigarette Paper Products in the United States has been and will continue to be harmed by Defendants' acts.

9.      North Atlantic has also suffered and will continue to suffer lost profits from lost sales of authentic ZIG-ZAG® Cigarette Paper Products.

10.     Accordingly, North Atlantic seeks recovery of all damages caused by Defendants' unlawful distribution of counterfeit ZIG-ZAG® Cigarette Paper Products and an order from this Court enjoining Defendants from the further distribution of counterfeit ZIG-ZAG® Cigarette Paper Products.

11.     North Atlantic also seeks recovery of enhanced damages under the Lanham Act or North Atlantic's damages caused by Defendants' willful infringement of the ZIG-ZAG® Trademarks and the NAOC® Trademark, whichever is greater; enhanced damages under the Copyright Act or North Atlantic's damages caused by Defendants' willful infringement of the NAOC© Copyright, whichever is greater; costs and attorneys' fees; and such other and further relief as this Court deems just and proper.  In the alternative, at an appropriate time, North

3

Atlantic reserves its right to seek statutory damages for willful infringement of its NAOC®

Trademark and NAOC© Copyright.

## JURISDICTION AND VENUE

12.   This Court has subject matter jurisdiction over North Atlantic's Lanham Act and

Copyright Act claims pursuant to 15 U.S.C. § 1121 (trademark) and 28 U.S.C. §§ 1331 (federal

question) and 1338(a) (trademark and copyright).

13.   This Court has subject matter jurisdiction over North Atlantic's New York

General Business Law and common law claims pursuant to 28 U.S.C. § 1338(b) (claims of

deceptive acts and practices, false advertising, and unfair competition joined with substantial and

related trademark and copyright claims) and 28 U.S.C. § 1367(a) (claims that are so related to

the claims in the action within the Court's original jurisdiction that they form part of the same

case or controversy).

14.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that,

among other things, a substantial portion of the events or omissions giving rise to this action

occurred in this judicial district and the products at issue are being and have been distributed in

and around this judicial district.

## THE PARTIES

### The Plaintiffs

15.   NAOC is a corporation organized and existing under the laws of the State of

Delaware with an office and principal place of business at 5201 Interchange Way, Louisville,

Kentucky 40229.

16.     NTC is a limited partnership organized and existing under the laws of the State of Delaware with an office and principal place of business at 5201 Interchange Way, Louisville, Kentucky 40229.

The Defendants

17.     Upon information and belief, Defendant Evergreen Distributors, LLC ("Evergreen") is a Louisiana entity with locations at 14189 Audobon Trce., Saint Francisville, Louisiana 70775; 301 New Hwy., Hauppage, New York 11788; and 72 Longview Road, Port Washington, NY 11050.  Evergreen sells and distributes a variety of consumer products, including ZIG-ZAG® Orange, to other wholesalers across the nation from its locations in the State of New York.

18.     Upon information and belief, Defendant New Line Food Distribution, Inc. ("New Line") is a New York entity with a wholesale location at 301 New Hwy., Hauppauge, New York 11788, which sells, distributes, or otherwise participates in the sale and distribution of a variety of consumer products, including ZIG-ZAG® Orange, to other wholesalers across the nation from its location in the State of New York.

19.     Upon information and belief, Defendant Douglas Ezring ("Ezring") is a citizen of New York, residing at 6536 Wetherhole Street, Apartment 304, Rego Park, New York 11374 and/or 72 Longview Road, Port Washington, NY 11050.  Upon information and belief, Defendant Ezring is the owner of New Line, is intimately involved in the operations of Evergreen, and is involved in the nationwide sale and distribution of a variety of consumer products, including ZIG-ZAG® Orange, to wholesalers.

20.     Evergreen, New Line, and Ezring are collectively referred to herein as the "Evergreen Defendants."

21.     Upon information and belief, Defendant Hookah Plus, Inc., d/b/a Hookah Plus ("Hookah Plus"), is a New York entity with a wholesale location at 11 West 27th Street, New York, New York 10001, which sells and distributes a variety of consumer products, including ZIG-ZAG® Orange, to retail locations across the country, and a retail location at 234 Fifth Avenue, New York, New York 10001, which purchases and sells a variety of consumer products, including ZIG-ZAG® Orange.

22.     Upon information and belief, Defendant Hussein Hachem ("Hachem") is a citizen of New Jersey, residing at 95 Waverly Street, Fl. 1, Jersey City, New Jersey 07306.  Defendant Hachem is, upon information and belief, the owner of Hookah Plus and is involved in the sale and distribution of a variety of consumer products, including ZIG-ZAG® Orange, to retail locations in the Detroit Area (defined herein) and elsewhere.

23.     Hookah Plus and Hachem are collectively referred to herein as the "Hookah Plus Defendants."

24.     Upon information and belief, Defendant Manhattan Wholesalers NY Corp., d/b/a Manhattan Wholesalers, Inc. ("Manhattan Wholesalers"), is a New York entity with a wholesale location at 121 West 27th Street, New York, New York 10001, which sells and distributes a variety of consumer products, including ZIG-ZAG® Orange, to retail locations in the New York Area and in the Albany/Capital Region (defined herein).

25.     Upon information and belief, Defendant Majid Rashidzada ("Rashidzada") is a citizen of New York, residing at 130 Majestic Drive, Dix Hills, New York 11746.  Defendant Rashidzada is, upon information and belief, the owner of Manhattan Wholesalers and is involved in the sale and distribution of a variety of consumer products, including ZIG-ZAG® Orange, to retail locations in the New York Area and in the Albany/Capital Region.

26.     Upon information and belief, Defendant Majid Haroon ("Haroon") is a citizen of New York, residing at (a) 45 Charles Street, Hicksville, New York 11801; and/or (b) 21 Jayson Avenue, Great Neck, New York 11021.[1]  Haroon is, upon information and belief, involved in the sale and distribution of a variety of consumer products, including ZIG-ZAG® Orange.  Also upon information and belief, Defendant Haroon has been an agent of Defendant Manhattan Wholesalers and/or its owner, Defendant Rashidzada

27.     Manhattan Wholesalers, Rashidzada, and Haroon are collectively referred to herein as the "Manhattan Wholesalers Defendants."

28.     Upon information and belief, Defendant 23rd St. General Market & Deli Corp., d/b/a General Market & Deli ("General Market"), is a New York entity with a retail location at 713 4th Avenue, Brooklyn, New York 11232.  Defendant General Market purchases and sells a variety of consumer products, including ZIG-ZAG® Orange.

29.     Upon information and belief, Defendant Gourmet Food Market is a New York entity with a retail location at 246 11th Street, Brooklyn, New York 11215.  Defendant Gourmet Food Market purchases and sells a variety of consumer products, including ZIG-ZAG® Orange.

30.     Upon information and belief, Defendant New Star Tobacco, Inc., d/b/a New Star Tobacco ("New Star Tobacco"), is a New York entity with a retail location at 75 5th Avenue, Brooklyn, New York 11217.  Defendant New Star Tobacco purchases and sells a variety of consumer products, including ZIG-ZAG® Orange.

---

[1]     On November 5, 2012, North Atlantic commenced an action in the U.S. District Court for the District of Massachusetts, captioned North Atlantic Operating Company, Inc. v. ABC Mini Market et al., Civil Action No. 12-cv-12063-FDS (the "Massachusetts Action"), in which Haroon was named as a defendant.  To date, Haroon has neither filed an Answer or motion responding to the operative complaint, nor formally appeared through an attorney, in the Massachusetts Action.  Allegedly, Haroon's failure to answer is due to improper service upon him at the 21 Jayson Avenue, Great Neck, New York address, where Haroon contends he does not actually reside.  On August 22, 2013, North Atlantic filed a Motion for Entry of Default against Haroon in the Massachusetts Action.  That Motion was granted by the Court.  North Atlantic filed the instant action against Mr. Haroon, in part, to overcome Haroon's service objections and potential objections to the assertion of personal jurisdiction over him in the Massachusetts Action.

31.     General Market, Gourmet Food Market, and New Star Tobacco are collectively referred to herein as the "Retailer Defendants."

32.     North Atlantic does not know the true names and capacities of the Defendants sued herein as JOHN DOES ONE through TEN, inclusive, and therefore sues these Defendants by such fictitious names.  North Atlantic will amend this Complaint to allege the true names and capacities of these Defendants if it ascertains the same.

## STATEMENT OF FACTS

### North Atlantic's Authentic ZIG-ZAG® Cigarette Paper Products

33.     As set forth above, North Atlantic is the leading seller and distributor of ZIG-ZAG® Cigarette Paper Products in the United States.

34.     Since 1938, North Atlantic and its predecessor-in-interest have continuously distributed ZIG-ZAG® Cigarette Paper Products bearing authentic versions of the ZIG-ZAG® Trademarks in the United States.

35.     In 1997, North Atlantic was established to be the exclusive United States distributor of authentic ZIG-ZAG® Cigarette Paper Products.  Such products are purchased by individuals who prefer to roll their own tobacco products rather than purchase pre-made cigarettes.  For more than a century, consumers in the United States have used ZIG-ZAG® Cigarette Paper Products for this purpose.

36.     Authentic ZIG-ZAG® Cigarette Paper Products come in several varieties, which differ in thickness, quality of paper, size, and the like.  One of the Cigarette Paper Products offered for sale by North Atlantic in the United States is ZIG-ZAG® Orange, which are 45 millimeters wide and 78 millimeters long.

37.     Authentic ZIG-ZAG® Orange is shipped into the United States from France in booklets.  Booklets are housed in cartons, and cartons are housed in outer shipping cases and transferred in pallets.

38.     One pallet of ZIG-ZAG® Orange contains 156 cases.  Each case contains 25 cartons.  Each carton contains 24 booklets.  Each booklet contains 32 leaves of ZIG-ZAG® Orange paper.

39.     Once authentic ZIG-ZAG® Orange papers are received by North Atlantic in the United States, North Atlantic's employees perform strict and exacting quality control testing on them to ensure the products are of uniform quality, meet with North Atlantic's precise quality standards, and properly display the ZIG-ZAG® Trademarks and other source identifiers.

40.     North Atlantic sells cases or pallet quantities of authentic ZIG-ZAG® Orange to its direct accounts, which, for the most part, are distributors throughout the United States.  North Atlantic's distributors sell authentic ZIG-ZAG® Orange to retailers and, in some cases, to other distributors.  Finally, the retailers sell authentic ZIG-ZAG® Orange to United States consumers in booklets and/or in cartons.  All of these sales are made in accordance with an array of state and federal laws and regulations.

<u>The Infringed Trademarks and Copyright</u>

41.     For over 90 years, the ZIG-ZAG® Trademarks have been used continuously in connection with the sale and distribution of authentic ZIG-ZAG® Cigarette Paper Products, including ZIG-ZAG® Orange.  From the beginning, the ZIG-ZAG® Trademarks were strong and arbitrary.

42.     Also, since 1997 and 2001, respectively, North Atlantic has continuously used the NAOC® Trademark and the NAOC© Copyright in connection with its exclusive sale and

distribution of authentic ZIG-ZAG® Cigarette Paper Products in the United States, including ZIG-ZAG® Orange.

43.     Because of its tremendous sales history, and because of the exclusive, lengthy, and extensive use of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright on goods of superior quality, North Atlantic has developed substantial goodwill and a reputation as the exclusive source for high-quality ZIG-ZAG® Cigarette Paper Products among United States consumers.

44.     North Atlantic is known nationwide as the exclusive and only source of authentic ZIG-ZAG® Cigarette Paper Products, including ZIG-ZAG® Orange.

45.     North Atlantic's Cigarette Paper Products bear authentic versions of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright and are sold in interstate commerce pursuant to an exclusive licensing arrangement between North Atlantic and the French company Bolloré, S.A. ("Bolloré"), the registered owner of the ZIG-ZAG® Trademarks for cigarette papers.

46.     Over the past decade, millions of dollars' worth of Cigarette Paper Products bearing authentic versions of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright, including ZIG-ZAG® Orange, have been sold in the United States.

47.     Because of North Atlantic's extensive use of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright, and because of the extensive amount of sales and related promotional activities by North Atlantic or its agents in the United States, the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright have become famous as a matter of law.

48.     Both the ZIG-ZAG® and NAOC® Trademarks are duly registered with the United States Patent and Trademark Office.  These registrations are valid and subsisting and include, but are not limited to, the following:

    a.  Registration No. 610,530 for ZIG-ZAG® (stylized);

    b.  Registration No. 1,127,946 for ZIG-ZAG®;

    c.  Registration No. 2,169,540 and No. 2,169,549 for the Smoking Man Design;

    d.  Registration No. 2,664,694 and No. 2,664,695 for North Atlantic Operating Company and design; and,

    e.  Registration No. 2,610,473 and No. 2,635,446 for North Atlantic Operating Company.

Moreover, the registrations for ZIG-ZAG® (stylized), ZIG-ZAG®, and the Smoking Man Design® are all incontestable.  True and correct copies of the records from the USPTO denoting the federal trademark registrations for the above marks are annexed hereto as Exhibit A.

49.     As described above, North Atlantic uses the ZIG-ZAG® Trademarks pursuant to an exclusive licensing arrangement with Bolloré, and North Atlantic is the exclusive importer and distributor of authentic ZIG-ZAG® Cigarette Paper Products in the United States.  North Atlantic owns the federal trademark registration for the NAOC© Trademarks.

50.     On October 11, 2001, a registration was issued by the U.S. Copyright Office to North Atlantic for a visual material/computer graphic entitled "North Atlantic Operating Company, Inc.," referred to herein as the NAOC© Copyright.  A copy of the registration for the NAOC© Copyright is attached hereto as Exhibit B.  Currently, and at all relevant times, North Atlantic has been the proprietor of all rights, title, and interest in and to the NAOC© Copyright.

11

51.     Authentic versions of the ZIG-ZAG® and NAOC© Trademarks and the NAOC© Copyright appear alone or in combination on all of North Atlantic's authentic ZIG-ZAG® Cigarette Paper Products in the United States, including ZIG-ZAG® Orange.

52.     Specifically, all authentic ZIG-ZAG® Orange booklets, cartons, and cases sold and distributed by North Atlantic in the United States bear both the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright and contain the express statement "Distributed by North American Operating Company, Inc."

53.     The product packaging for authentic ZIG-ZAG® brand Cigarette Paper Products is also highly distinctive. For instance, authentic ZIG-ZAG® Orange booklets feature: (1) the ZIG-ZAG® Trademarks, including the Smoking Man Design, and the NAOC® Trademark and the NAOC © Copyright; (2) gold-fill lettering and design elements; and (3) French phrases such as "Qualite Superieure" and "Braunstein Freres France." The back of the booklets state specifically that they are "Distributed by NORTH ATLANTIC OPERATING COMPANY, INC."

### Booklet[2]



---

[2]     8 ½" x 11" copies of the below images of the ZIG-ZAG® Orange booklets are attached hereto as Exhibit C.



54.     Packaging for authentic ZIG-ZAG® Orange cartons is similarly distinctive to the booklet packaging, in that the cartons feature the ZIG-ZAG® and NAOC® Trademarks.

**Carton[3]**



---

[3]      A 8 ½" x 11" copy of the below image of the ZIG-ZAG® Orange carton is attached hereto as Exhibit D.

55.     The ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright thus serve to identify North Atlantic as the sole source and supplier of authentic ZIG-ZAG® Cigarette Paper Products in the United States.  United States consumers who purchase or acquire ZIG-ZAG® Cigarette Paper Products readily associate such products with North Atlantic.

<u>Defendants' Willful Infringing Activities</u>

56.     Based on North Atlantic's investigation to date, Defendants have been engaged in a widespread, unlawful scheme of acquiring, selling, and distributing counterfeit ZIG-ZAG® Cigarette Paper Products, specifically, counterfeit ZIG-ZAG® Orange.  Upon information and belief, the Evergreen Defendants, the Hookah Plus Defendants, the Manhattan Wholesalers Defendants, the Retailer Defendants, and the John Doe Defendants' misconduct in engaging in this counterfeiting scheme is willful.

57.     The key to Defendants' scheme is their use of packaging that simulates the packaging of authentic ZIG-ZAG® Orange distributed by North Atlantic, namely, packaging that bears virtually identical reproductions of the ZIG-ZAG® and NAOC® Trademarks and unauthorized, unlicensed copies of the NAOC© Copyright, as well as papers and packaging that are not manufactured pursuant to or subject to North Atlantic's strict quality control measures.

58.     Specifically, the Evergreen Defendants, the Hookah Plus Defendants, and the Manhattan Wholesalers Defendants sell their counterfeit ZIG-ZAG® Orange to other wholesalers or to retailers, including the Retailer Defendants, in large quantities for significant profits.  If initially sold to other wholesalers, those secondary wholesalers then in turn sell the counterfeit ZIG-ZAG® Orange to retailers.  Regardless of whether there are intermediate wholesalers, once the retailers obtain the counterfeit ZIG-ZAG® Orange, they sell the

14

counterfeit ZIG-ZAG® Orange in the same retail outlets where consumers would expect to find authorized ZIG-ZAG® Orange, thereby directly competing with North Atlantic's authentic products.

59.     None of the Defendants are authorized or licensed to sell or distribute any infringing products bearing the ZIG-ZAG® or NAOC® Trademarks; nor are any of the Defendants authorized or licensed to sell or distribute any product packaging that simulates North Atlantic's product packaging or that displays reproductions or exact copies of the NAOC© Copyright.

*Retailer Defendants' Willful Infringement*

60.     Nevertheless, North Atlantic's agents purchased purported ZIG-ZAG® Orange from the Retailer Defendants at their retail locations and confirmed through observation and testing that they were counterfeit in nature, namely, that the packaging and papers were not genuine products offered for sale in the United States by North Atlantic and contained numerous differences in quality and composition from authentic ZIG-ZAG® Orange.

61.     The counterfeit ZIG-ZAG® Orange for sale by the Retailer Defendants at their retail locations in the State of New York contained exact copies of both the ZIG-ZAG® and NAOC® Trademarks and contained unauthorized, unlicensed reproductions of the NAOC© Copyright without permission from North Atlantic, in direct violation of North Atlantic's trademark rights and exclusive rights under section 106 of the Copyright Act.

62.     Upon information and belief, the Retailer Defendants' adoption of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright is not only unauthorized and without permission, but, as set forth in further detail below, is intentional, willful, and malicious,

and in intentional, willful, and malicious disregard of North Atlantic's rights and of consumers' interests.

63.     Upon information and belief, the Retailer Defendants have been distributing counterfeit ZIG-ZAG® Orange with full knowledge of North Atlantic's prior, exclusive rights in the ZIG-ZAG® and NAOC® Trademarks and in the NAOC© Copyright, and with the intent to trade on and benefit from the goodwill and value established therein by North Atlantic.

64.     All of the Retailer Defendants are on notice of the counterfeit nature of their products and of the illegality of purchasing, offering for sale, and/or selling counterfeit ZIG-ZAG® Orange.  Nevertheless, upon information and belief, they have continued to sell and/or distribute such products through sales to consumers and/or other distributors.

65.     As set forth in detail below, all of the Retailer Defendants have received letters from North Atlantic demanding that, among other things, they cease and desist from distributing counterfeit ZIG-ZAG® Orange and provide North Atlantic with information regarding the source of their counterfeit products.  To date, however, none of the Retailer Defendants have fully cooperated with North Atlantic in identifying the source(s) of their counterfeit products, as the cease and desist letter demanded.

(i)     Defendant General Market

66.     On May 29, 2012, North Atlantic's sales agents purchased ZIG-ZAG® Orange from Defendant General Market at its retail store at 713 4th Avenue in Brooklyn in New York.

67.     After the purchase, North Atlantic learned through careful inspection and analysis that the ZIG-ZAG® Orange it purchased from Defendant General Market was counterfeit in nature, in that the papers and their packaging were not genuine products offered for sale by

North Atlantic in the United States and contained numerous differences in quality and composition from North Atlantic's authentic ZIG-ZAG® Orange.

68.     North Atlantic's representatives returned to the premises to hand deliver a cease and desist letter, which demanded that, among other things, Defendant General Market: (a) immediately and permanently cease and desist from selling any counterfeit ZIG-ZAG® Orange; and (b) take steps to cooperate with North Atlantic's investigation by producing documents and other information identifying the source(s) of counterfeit ZIG-ZAG® Orange sold from its store.

69.     Defendant General Market has failed to cooperate fully and in good-faith with North Atlantic in its investigation, in that Defendant General Market identified a wholesaler as its source of the counterfeit ZIG-ZAG® Orange but failed to support its identification with any corroborating documents or evidence as requested by North Atlantic.

(ii)     Defendant Gourmet Food Market

70.     On May 29, 2012, North Atlantic's sales agents purchased ZIG-ZAG® Orange from Defendant Gourmet Food Market at its retail store at 246 11th Street in Brooklyn, New York.

71.     After the purchase, North Atlantic learned through careful inspection and analysis that the ZIG-ZAG® Orange it purchased from Defendant Gourmet Food Market was counterfeit in nature, in that the papers and their packaging were not genuine products offered for sale by North Atlantic in the United States and contained numerous differences in quality and composition from North Atlantic's authentic ZIG-ZAG® Orange.

72.     North Atlantic's representatives returned to the premises to hand deliver a cease and desist letter, which demanded that, among other things, Defendant Gourmet Food Market: (a) immediately and permanently cease and desist from selling any counterfeit ZIG-ZAG®

Orange; and (b) take steps to cooperate with North Atlantic's investigation by producing documents and other information identifying the source(s) of counterfeit ZIG-ZAG® Orange sold from its store.

73.     Defendant Gourmet Food Market has failed to cooperate fully and in good-faith with North Atlantic in its investigation, in that Defendant Gourmet Food Market identified a wholesaler as its source of the counterfeit ZIG-ZAG® Orange but failed to support its identification with any corroborating documents or evidence as demanded by North Atlantic.

(iii)     Defendant New Star Tobacco

74.     On May 29, 2012, North Atlantic's sales agents purchased ZIG-ZAG® Orange from Defendant New Star Tobacco at its retail store at 75 5th Avenue in Brooklyn in New York.

75.     After the purchase, North Atlantic learned through careful inspection and analysis that the ZIG-ZAG® Orange it purchased from Defendant New Star Tobacco was counterfeit in nature, in that the papers and their packaging were not genuine products offered for sale by North Atlantic in the United States and contained numerous differences in quality and composition from North Atlantic's authentic ZIG-ZAG® Orange.

76.     North Atlantic's representatives returned to the premises to hand deliver a cease and desist letter, which demanded that, among other things, Defendant New Star Tobacco: (a) immediately and permanently cease and desist from selling any counterfeit ZIG-ZAG® Orange; and (b) take steps to cooperate with North Atlantic's investigation by producing documents and other information identifying the source(s) of counterfeit ZIG-ZAG® Orange sold from its store.

77.     To date, Defendant New Star Tobacco has taken no steps to cooperate, refusing to turn over invoices, receipts, or other documents that would assist North Atlantic in identifying Defendant New Star Tobacco's source(s).

*Hookah Plus Defendants and Manhattan Wholesalers Defendants' Willful Infringement*

78.     During the same time period in which North Atlantic's sale agents were conducting controlled buys at the Retailer Defendants, North Atlantic began to receive reports from its sales agents in other regions detailing how counterfeit ZIG-ZAG® Orange was being found in substantial quantities throughout North Atlantic's supply chain.

79.     In response to these reports, North Atlantic began conducting similar investigations involving controlled buys in and around Albany, New York (the "Albany/Capital Region"); Worcester, Massachusetts (the "Massachusetts Area"); Detroit, Michigan (the "Detroit Area"); Los Angeles, California; Philadelphia, Pennsylvania (the "Philadelphia Area"); and other metropolitan areas across the nation.

80.     North Atlantic, proceeding deliberately and methodically, determined through its investigations that the sale and distribution of counterfeit ZIG-ZAG® Orange was occurring in a pervasive manner and on a national scale.

81.     Based on the information gathered during its investigations, North Atlantic filed lawsuits against individuals, retailers, and wholesalers involved in the counterfeiting of ZIG-ZAG® Orange in the Albany/Capital Region in the Northern District of New York (1:12-cv-01651-DNH-RFT) (filed on November 5, 2012) (the "Northern District Action"); the Massachusetts Area in the District of Massachusetts (Case No. 1:12-cv-12063-FDS) (filed on November 5, 2012) (the "Massachusetts Action"); and the Detroit Area in the Eastern District of Michigan (Case No. 2:13-cv-11791-GER-MAR) (filed on April 22, 2013) (the "Michigan Action").

82.     The Michigan Action alone involved 27 retailers and two wholesalers who engaged in counterfeiting and who, even after receiving cease and desist letters from North Atlantic, refused to cooperate with North Atlantic's investigation.

83.     Prompted by the threat of legal action, the previously recalcitrant defendants in these lawsuits began to cooperate with North Atlantic's investigation to varying degrees.  These defendants' cooperation led North Atlantic and its investigators back to the New York Area.

84.     To wit, the cooperating defendants identified individuals and businesses operating within this judicial district that have been, and continue to be, intimately involved in the distribution and sale of counterfeit ZIG-ZAG® Orange.

85.     Specifically, North Atlantic's investigation identified the Hookah Plus Defendants as the primary suppliers of counterfeit ZIG-ZAG® Orange to retail locations in the Detroit Area.

86.     In the spring of 2012, a defendant in the Michigan Action purchased 400 cartons of what purported to be authentic ZIG-ZAG® Orange at below-market prices from the Hookah Plus Defendants.  The transaction occurred in person between the Michigan Action defendant and Defendant Hachem at Defendant Hookah Plus's wholesale location at 11 West 27th Street, New York, New York  10001.

87.     The Michigan Action defendant paid $18.00/carton for all 400 cartons, for a total sale of $7,200.00 in cash.

88.     Within hours, the Hookah Plus Defendants had assembled the Michigan Action defendant's entire order and issued him an invoice for the sale.

89.     Thereafter, the Michigan Action defendant returned to the Detroit Area, where he disseminated the counterfeit ZIG-ZAG® Orange.

90.     By the fall of 2012, the Michigan Action defendant had distributed all 400 cartons of counterfeit ZIG-ZAG® Orange he purchased from the Hookah Plus Defendants.

91.     Therefore, he placed a telephone order for another 200 cartons of counterfeit ZIG-ZAG® Orange using Defendant Hachem's cell phone number, (646) 666-5109, which Defendant Hachem had given him for this purpose.

92.     Again, the Michigan Action defendant paid $18.00/carton for all 200 cartons, for a total sale of $3,600 in cash.

93.     As on other occasions when the Michigan Action defendant placed remote orders for consumer goods with the Hookah Plus Defendants, he deposited cash into what he was told was Defendant Hachem's bank account.

94.     In exchange, the Michigan Action defendant received 200 cartons of what was later conclusively determined to be counterfeit ZIG-ZAG® Orange in the mail.

95.     Upon information and belief, the Hookah Plus Defendants continue to offer counterfeit ZIG-ZAG® Orange to retailers in the New York Area, the Detroit Area, and elsewhere; they continue to have access to hundreds, if not thousands, of cartons of counterfeit ZIG-ZAG® Orange and they are distributing them with impunity.

96.     North Atlantic's investigation has also uncovered that the Manhattan Wholesalers Defendants have been supplying retailers and/or wholesalers throughout New York (including in the New York Area and the Albany/Capital Region) with counterfeit ZIG-ZAG® Orange.

97.     Specifically, a defendant in the Northern District Action purchased numerous cartons of purportedly authentic ZIG-ZAG® Orange from a jobber, which were later conclusively determined to be counterfeit.

98.     According to records and testimony furnished in connection with the Northern District Action, the counterfeit ZIG-ZAG® Orange was originally purchased from the Manhattan Wholesalers Defendants in New York, New York.

99.     Moreover, numerous retailers in the New York Area identified the Manhattan Wholesalers Defendants as their source for confirmed counterfeit ZIG-ZAG® Orange.

*Evergreen Defendants' Willful Infringement*

100.     In August 2013, North Atlantic's investigation uncovered that a wholesaler in Beaumont, Texas, Wholesale Outlet/Starco Impex (the "Texas Wholesaler") had inadvertently purchased hundreds of cartons of counterfeit ZIG-ZAG® Orange.

101.     After discussions with the overall sales manager at NTC, the Texas Wholesaler agreed to make a controlled buy on behalf of North Atlantic and at North Atlantic's direction.

102.     The Texas Wholesaler contacted the Evergreen Defendants through an individual located in the State of New York. This intermediary, who, upon information and belief was acting on behalf of the Evergreen Defendants, offered a significant discount on the price of the purported ZIG-ZAG® Orange from what the Texas Wholesaler would ordinarily pay for ZIG-ZAG® Orange.

103.     Shortly thereafter, the Texas Wholesaler successfully placed an order for 800 cartons of purportedly authentic ZIG-ZAG® Orange for $23.00/carton, which is a price significantly less than that which is typically offered to wholesalers (approximately $26.24/carton).

104.     The 800 cartons of purportedly authentic ZIG-ZAG® Orange were sent via FedEx from Bethpage, New York, on August 21, 2013; they were delivered to the Texas Wholesaler's facility in Beaumont, Texas, on August 27, 2013.

105.    The shipping label on the FedEx package contained the following information: (1) a return address, *to wit,* Douglas Ezring, Evergreen Distributors, 72 Longview Road, Port Washington, NY 11050; (2) a telephone number, 347-556-5470, which traces back to Douglas Ezring at 301 New Hwy., Hauppage, New York 11788; and (3) a tracking number, which confirms that the package was shipped from Bethpage, New York.

106.    Further investigation determined that several businesses, including Defendant New Line, share the same 301 New Hwy., Hauppage, New York 11788 address as the other Evergreen Defendants.

107.    Accompanying the 800 cartons of purported ZIG-ZAG® Orange was an invoice from Evergreen, which displayed an address at 7197 Hwy. 61, P.O. Box 3325, Saint Francisville, Louisiana 70775.

108.    The Texas Wholesaler turned over the invoice to North Atlantic and further informed North Atlantic representatives that the appeared to be of sub-standard quality and, in its opinion, were likely counterfeit.

109.    At North Atlantic's direction, the Texas Wholesaler overnighted two (2) cartons of the purported ZIG-ZAG® Orange to North Atlantic's Research and Development Department ("R&D") in Louisville, Kentucky.

110.    R&D conducted a visual inspection of the particular products and their contents, and concluded on the basis of its analysis that the ZIG-ZAG® Orange purchased from the Evergreen Defendants was counterfeit, as opposed to genuine, in nature.

111.    In the two weeks immediately preceding the filing of this Complaint, the Evergreen Defendants again contacted the Texas Wholesaler and pressured it to buy additional

cartons of purported ZIG-ZAG® Orange immediately. The Texas Wholesaler has not purchased any additional cartons.

112.    The counterfeit ZIG-ZAG® Orange distributed by the Evergreen Defendants contained exact copies of both the ZIG-ZAG® and NAOC® Trademarks and contained unauthorized, unlicensed reproductions of the NAOC© Copyright without permission from North Atlantic, in direct violation of North Atlantic's trademark rights and exclusive rights under section 106 of the Copyright Act.

113.    Upon information and belief, the Evergreen Defendants' adoption of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright is not only unauthorized and without permission, but, as set forth in further detail below, is intentional, willful, and malicious, and done in intentional, willful, and malicious disregard of North Atlantic's rights and of consumers' interests.

114.    Upon information and belief, the Evergreen Defendants have been distributing counterfeit ZIG-ZAG® Orange with full knowledge of North Atlantic's prior, exclusive rights in the ZIG-ZAG® and NAOC® Trademarks and in the NAOC© Copyright, and with the intent to trade on and benefit from the goodwill and value established therein by North Atlantic.

*    *    *

115.    In sum, North Atlantic has determined that all Defendants in this action are using locations within New York State to distribute, sell and/or store counterfeit ZIG-ZAG® Orange as part of a nation-wide counterfeiting scheme.

Irreparable Harm to North Atlantic

116.    Defendants' conduct described above is depriving North Atlantic of the absolute right to control the quality of its Trademarks, to which North Atlantic possesses the exclusive

rights in the United States, and deprives North Atlantic of its exclusive rights pursuant to section 106 of the Copyright Act.

117.    Defendants are thereby jeopardizing the enormous goodwill and value associated with those Trademarks and the NAOC© Copyright, which North Atlantic and/or its predecessor-in-interest have built up over the past century.

118.    Exacerbating the risk of injury to North Atlantic in this case is the fact that the counterfeit products sold by Defendants are of inferior quality to those sold and distributed by North Atlantic.  For instance, the paper in Defendants' products' packaging is of inferior quality to authentic ZIG-ZAG® Orange, and the booklets are of glossier, cheaper construction.

119.    For this and other similar reasons, United States consumers are likely to think less favorably of North Atlantic's authentic ZIG-ZAG® Cigarette Paper Products than if they had purchased authentic ZIG-ZAG® Cigarette Paper Products from North Atlantic.

120.    Defendants' sale of counterfeit ZIG-ZAG® Orange also deprives North Atlantic of sales and profits it otherwise would receive but for Defendants' unlawful conduct.  Consumers deceived by Defendants' simulated ZIG-ZAG® Orange packaging have and will purchase Defendants' counterfeit products instead of North Atlantic's authentic products, and because the counterfeit goods are of a materially inferior quality, there may be a decreased demand for North Atlantic's authentic ZIG-ZAG® Cigarette Paper Products over time.

121.    Finally, Defendants' scheme is harming, and will continue to harm, the public. Consumers have been, are, and will continue to be confused as to the source and origin of Defendants' counterfeit products, and they are, have been, and will continue to be duped into purchasing inferior, counterfeit products instead of the genuine ZIG-ZAG® brand Cigarette Paper Products they intended to purchase.

122.    As a direct and proximate result of the foregoing, North Atlantic has suffered and, unless Defendants' conduct is enjoined by this Court, will continue to suffer actual economic damages in the form of lost sales, revenues, and profits, as well as immediate and irreparable harm for which it has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### Infringement of Registered Trademarks
### Section 23 of the Lanham Act, 15 U.S.C. § 1114

123.    North Atlantic repeats and realleges the allegations contained in paragraphs 1 through 122, above, as though fully set forth herein.

124.    Because North Atlantic advertises, markets, and exclusively distributes Cigarette Paper Products under the NAOC® Trademark described above, the NAOC® Trademark is the means by which North Atlantic's Cigarette Paper Products are distinguished from other such products in the same field.

125.    Because North Atlantic has continuously used the NAOC® Trademark in connection with its distribution of Cigarette Paper Products, it has come to mean, and is understood by customers and the public to signify, Cigarette Paper Products distributed by North Atlantic.

126.    By their conduct described above, including, without limitation, the unauthorized use of the NAOC® Trademark in connection with the distribution, sale, purchase, and acquisition of counterfeit and infringing ZIG-ZAG® Orange, and the distribution and sale in interstate commerce of counterfeit and infringing ZIG-ZAG® Orange bearing exact copies of the NAOC® Trademark, Defendants are willfully infringing North Atlantic's registered trademark(s) in violation of section 23 of the Lanham Act, 15 U.S.C. § 1114.  At a bare

minimum, Defendants have acted with willful blindness to, and in reckless disregard of, North Atlantic's registered trademarks.

127.    As detailed above, Defendants' conduct is likely to cause confusion and mistake and is likely to deceive distributors and consumers as to the source and origin of the counterfeit products. Defendants' misconduct is likely to lead consumers and members of the public to believe that North Atlantic has sponsored, authorized, licensed, or endorsed Defendants' products for sale in the United States, and that Defendants' products are being distributed by an authorized distributor, when they are not.

128.    As a result of Defendants' wrongful conduct, North Atlantic has been, is, and will continue to be irreparably harmed unless Defendants are enjoined from the unlawful conduct described above. North Atlantic has no adequate remedy at law.

129.    In light of the foregoing, North Atlantic is entitled to an injunction prohibiting Defendants from selling or distributing counterfeit and/or infringing ZIG-ZAG® Cigarette Paper Products, including counterfeit and/or infringing ZIG-ZAG® Orange, and to recover from Defendants all damages that North Atlantic has sustained, is sustaining, and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts, in an amount not yet known but to be determined at trial, and the costs of this action pursuant to 15 U.S.C. § 1117(a), or, at North Atlantic's option, statutory damages pursuant to 15 U.S.C. § 1117(c).

130.    As this is an exceptional case given Defendants' willful acts, pursuant to 15 U.S.C. § 1117(a), North Atlantic is further entitled to enhanced damages or profits, whichever is greater, and its attorneys' fees. Alternatively, North Atlantic may elect to seek enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

131.   North Atlantic also is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) and to an order compelling the impounding of all infringing materials being offered, advertised, marketed and/or sold by Defendants pursuant to 15 U.S.C. § 1116, subsections (a) and (d)(1)(A), and 28 U.S.C. § 1651.

132.   North Atlantic has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (i) North Atlantic's trademarks are unique and valuable property that have no readily-determinable market value; (ii) Defendants' infringement constitutes harm to North Atlantic such that North Atlantic could not be made whole by any monetary award; (iii) if the Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (iv) Defendants' wrongful conduct, and the resulting damage to North Atlantic, is continuing.

## SECOND CAUSE OF ACTION

### Unfair Competition and False Designation of Origin or Sponsorship
### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

133.   North Atlantic repeats and realleges the allegations contained in paragraphs 1 through 132, above, as though fully set forth herein.

134.   Because North Atlantic advertises, markets, and exclusively distributes ZIG-ZAG® Cigarette Paper Products under the ZIG-ZAG® and NAOC® Trademarks described above, these trademarks are the means by which North Atlantic's Cigarette Paper Products are distinguished from other such products in the same field.

135.   Because North Atlantic has continuously used the ZIG-ZAG® and NAOC® Trademarks in connection with its exclusive distribution of ZIG-ZAG® Cigarette Paper

Products, they have come to mean, and are understood by customers and the public to signify, Cigarette Paper Products distributed by North Atlantic.

136.   Defendants' wrongful conduct includes, among other things, the unauthorized use of the ZIG-ZAG® and NAOC® Trademarks and resulting distribution and sale of infringing and/or counterfeit ZIG-ZAG® Cigarette Paper Products in infringing and/or counterfeit packaging, or packaging that does not originate with North Atlantic, the exclusive authorized distributor in the United States.

137.   In addition, it is a false and misleading description and representation of fact that the goods are distributed by North Atlantic, which false and misleading description and misrepresentation is likely to cause confusion or mistake or to deceive the relevant purchasing public as to the origin or sponsorship of Defendants' counterfeit goods.

138.   Upon information and belief, Defendants engaged in such wrongful conduct with the willful purpose of misleading, deceiving, or confusing customers and the public as to the origin and authenticity of the products offered, marketed and/or sold in connection with North Atlantic's trademarks, and of trading upon North Atlantic's goodwill and business reputation.

139.   Defendants' conduct constitutes: (i) false designation of origin; (ii) false or misleading description; and (iii) false or misleading representation that the counterfeit products originate from or are authorized by North Atlantic, all in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

140.   North Atlantic has been, is, and will continue to be irreparably harmed as a result of Defendants' unlawful actions, unless Defendants are enjoined from their unlawful conduct. North Atlantic has no adequate remedy at law.

141.    In light of the foregoing, North Atlantic is entitled to an injunction prohibiting Defendants from distributing infringing and/or counterfeit ZIG-ZAG® Cigarette Paper Products, including infringing and/or counterfeit ZIG-ZAG® Orange, and from using any trademarks confusingly similar to the ZIG-ZAG® and NAOC® Trademarks, and to recover from Defendants all damages that North Atlantic has sustained, is sustaining, and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known but to be determined at trial, and the costs of this action pursuant to 15 U.S.C. § 1117(a), or, at North Atlantic's option, statutory damages pursuant to 15 U.S.C. § 1117(c).

142.    As this is an exceptional case given Defendants' willful acts, pursuant to 15 U.S.C. § 1117(a), North Atlantic is further entitled to enhanced profits or damages, whichever is greater, and attorneys' fees, or, at North Atlantic's election, it may seek to recover enhanced statutory damages pursuant to 15 U.S.C. § 1117(c).

### THIRD CAUSE OF ACTION

### Copyright Infringement
### The Copyright Act, 17 U.S.C. § 501

143.    North Atlantic repeats and realleges the allegations contained in paragraphs 1 through 142, above, as if though set forth herein.

144.    The NAOC and design graphic entitled "North Atlantic Operating Company, Inc.," referred to herein as the NAOC© Copyright, is an original work under the Copyright Act and is subject to copyright protection under 17 U.S.C. § 101 *et seq.*

145.    As set forth above, North Atlantic is the owner of the NAOC© Copyright.

146.    By its actions alleged above, Defendants have infringed North Atlantic's NAOC© Copyright by, without limitation, producing, distributing, publicly displaying, and/or placing the

30

NAOC© Copyright on infringing and/or counterfeit products offered for sale by Defendants at their retail locations, in direct contravention of North Atlantic's exclusive rights under section 106 of the Copyright Act.

147.    As set forth above, Defendants' actions were willful and were undertaken with full knowledge of their illegal and infringing nature.

148.    To date, North Atlantic has complied with all requirements under 17 U.S.C. §§ 101 *et seq.* to acquire and maintain the NAOC© Copyright. North Atlantic has fully complied with the registrant requirements for the NAOC© Copyright as set out in 17 U.S.C. § 411.

149.    Defendants' acts alleged above constitute willful infringement of North Atlantic's NAOC© Copyright under the laws of the United States, as provided by 17 U.S.C. § 101 *et seq.*

150.    North Atlantic has been, is, and will continue to be irreparably harmed as a result of Defendants' infringement, unless Defendants are enjoined from the further infringement of the NAOC© Copyright. North Atlantic has no adequate remedy at law.

151.    In light of the foregoing, North Atlantic is entitled to an injunction prohibiting Defendants from distributing infringing and/or counterfeit ZIG-ZAG® Cigarette Paper Products, including infringing and/or counterfeit ZIG-ZAG® Orange, and from producing, distributing, publicly displaying, or placing the NAOC© Copyright on any product offered for sale by Defendants at their retail locations, and to recover from Defendants all damages that North Atlantic has sustained, is sustaining, and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known but to be determined at trial, pursuant to 17 U.S.C. § 504, or, at North Atlantic's option, statutory damages, pursuant to 17 U.S.C. § 504, together with the costs of this action, pursuant to 17 U.S.C. § 505.

## FOURTH CAUSE OF ACTION

### Deceptive Acts and Practices
### New York Gen. Bus. Law § 349

152.    North Atlantic repeats and realleges the allegations contained in paragraphs 1

through 151, above, as though fully set forth herein.

153.    By Defendants' unlawful conduct described above, including, without limitation,

the unlawful, unauthorized use of the ZIG-ZAG® and NAOC® Trademarks and the NAOC©

Copyright, and the resulting distribution and sale of infringing and/or counterfeit ZIG-ZAG®

Cigarette Paper Products in infringing and/or counterfeit packaging, or packing that does not

originate with North Atlantic, Defendants have engaged in deceptive acts and practices in the

conduct of business and furnishing of goods in violation of New York General Business Law §

349. Defendants' conduct is consumer-oriented, has affected the public interest of New York

State, and has resulted in injury to consumers within New York.

154.    Defendants' deceptive acts or practices are materially misleading and, upon

information and belief, have actually deceived and have a tendency to deceive a material

segment of the persons to whom Defendants are selling or distributing counterfeit and/or

infringing ZIG-ZAG® Cigarette Paper Products in counterfeit and/or infringing packaging, or

packaging that does not originate with North Atlantic, and North Atlantic has been irreparably

injured thereby.

155.    North Atlantic has been, is, and will continue to be irreparably harmed as a result

of Defendants' wrongful conduct described above, unless and until Defendants are enjoined from

such conduct. North Atlantic has no adequate remedy at law.

156.    In light of the foregoing, North Atlantic is entitled to an injunction prohibiting

Defendants from distributing infringing and/or counterfeit ZIG-ZAG® Cigarette Paper Products,

including infringing and/or counterfeit ZIG-ZAG® Orange, and from producing, distributing, publicly displaying, or placing the NAOC© Copyright on any product offered for sale by Defendants at their retail locations, and to recover from Defendants all damages that North Atlantic has sustained, is sustaining, and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts, in an amount not yet known but to be determined at trial, as well as costs, expenses, and attorneys' fees and such other and further relief this Court deems just and proper.

### Fifth Cause of Action

### Common Law Unfair Competition
### New York State Law

157.    North Atlantic repeats and realleges the allegations contained in paragraphs 1 through 156, above, as though fully set forth herein.

158.    Defendants' conduct, as alleged above, constitutes unfair competition under New York common law. Defendants' acts have resulted in the "passing off" of Defendants' products as those of North Atlantic, or as somehow related or associated with, or sponsored or endorsed by North Atlantic.

159.    As set forth above, Defendants' use of counterfeit versions of the ZIG-ZAG® and NAOC® Trademarks and the NAOC© Copyright was willful, intentional, and done with knowledge that the marks used were counterfeit marks and violated North Atlantic's exclusive rights therein.

160.    North Atlantic has been, is, and will continue to be irreparably harmed as a result of Defendants' wrongful conduct described above, unless and until Defendants are enjoined from such conduct. North Atlantic has no adequate remedy at law.

161.    In light of the foregoing, North Atlantic is entitled to an injunction prohibiting Defendants from distributing infringing and/or counterfeit ZIG-ZAG® Cigarette Paper Products, including infringing and/or counterfeit ZIG-ZAG® Orange, and from producing, distributing, publicly displaying, or placing the NAOC© Copyright on any product offered for sale by Defendants at their retail locations, and to recover from Defendants all damages that North Atlantic has sustained, is sustaining, and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts, in an amount not yet known but to be determined at trial, as well as costs, expenses, and attorneys' fees and such other and further relief this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, North Atlantic demands judgment against Defendants as follows:

1.    For judgment that:

   a.  Defendants have violated section 32(I) of the Lanham Act, 15 U.S.C. § 1114;

   b.  Defendants have violated section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

   c.  Defendants have violated the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*;

   d.  Defendants have engaged in deceptive acts or practices in violation of New York Gen. Bus. Law § 349;

   e.  Defendants have engaged in unfair competition in violation of New York State common law; and

   f.  Defendants acted in bad faith, willfully, intentionally, and/or with reckless disregard for North Atlantic's rights;

2.    For an order enjoining Defendants, their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and employees, and all persons in active

34

concert or participation with them, and mandating that Defendants forever cease and desist and refrain in the future from, anywhere in the world:

    a.   Directly or indirectly importing, manufacturing, distributing, advertising, promoting, making, purchasing, offering for sale or selling any counterfeit or infringing ZIG-ZAG® Cigarette Paper Products, including ZIG-ZAG® Orange, or any ZIG-ZAG® Cigarette Paper Products not sold under the authority of North Atlantic, or any packaging for same, containing infringing ZIG-ZAG® or NAOC® Trademarks, or any colorable imitation thereof, or the NAOC© Copyright;

    b.   Selling or passing off, or inducing or enabling others to sell or pass off, any of North Atlantic's products, or products not authorized by North Atlantic, not produced, imported and distributed under the control or supervision of North Atlantic, and/or approved for sale in the United States by North Atlantic under the ZIG-ZAG® and NAOC® Trademarks or using the NAOC© Copyright;

    c.   Committing any acts calculated to cause purchasers to believe that counterfeit or infringing ZIG-ZAG® Cigarette Paper Products are sold under the control or supervision of North Atlantic, when they are not;

    d.   In any way infringing or damaging the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright;

    e.   Importing, shipping, delivering, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by North Atlantic to be sold or offered for sale in the United States, and which bear infringing ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright;

    f.   Otherwise unfairly competing with North Atlantic in any manner;

g. Attempting, causing, or assisting any of the above-described acts, including but not limited to enabling others to conduct the scheme described above, or by passing along information to others to allow them to import, manufacture, distribute, advertise, promote, make, purchase, offer for sale or sell counterfeit or infringing ZIG-ZAG® Cigarette Paper Products; and,

h. Destroying or disposing of any documents, records, or electronic files relating to the import, manufacture, distribution, advertisement, promotion, making, purchase, offer to sell or sale of any product that has been or is intended to be sold in packaging containing the ZIG-ZAG® and NAOC® Trademarks or the NAOC© Copyright;

3. For an order enjoining Defendants and their agents, employees, representatives, successors, and assigns from forming or causing to be formed any corporation, partnership, or other entity that engages in any of the conduct described above;

4. For an order requiring Defendants to cooperate with North Atlantic in good faith in its investigations of counterfeit sales at their retail and wholesale establishments, including without limitation by:

a. Permitting North Atlantic's sales agents and/or other designees of North Atlantic to conduct inspections of Defendants' inventories of Cigarette Paper Products to determine whether any Cigarette Paper Products bearing the ZIG-ZAG® or NAOC® Trademarks or the NAOC© Copyright are counterfeit and to retain possession of any such counterfeit ZIG-ZAG® Cigarette Paper Products;

b. Responding to reasonable requests for information about Defendants' suppliers of ZIG-ZAG® Cigarette Paper Products; and

c. Cooperating with North Atlantic's sales agents and/or other designees of North

36

Atlantic in their investigations of any suppliers of ZIG-ZAG® Cigarette Paper Products;

5.    For an order:

    a.  Requiring Defendants to account for and pay over to North Atlantic all profits derived from their wrongful misconduct to the full extent provided for by section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a);

    b.  Requiring Defendants to account for and pay to North Atlantic enhanced damages resulting from their wrongful misconduct to the full extent provided for by section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

    c.  Awarding North Atlantic damages, or statutory damages in an amount not less than $2 million ($2,000,000) per trademark pursuant to section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c);

    d.  Requiring Defendants to account for and pay to North Atlantic all profits derived from their wrongful misconduct, to the full extent provided for by the Copyright Act, 17 U.S.C. § 504;

    e.  Awarding North Atlantic damages, or statutory damages in an amount not less than $150 thousand ($150,000) per infringement of the NAOC© Copyright which occurred after the filing of its copyright application against each of the Defendants separately and jointly;

    f.  Awarding North Atlantic general and special damages to the full extent provided by New York state law;

    g.  Awarding North Atlantic its costs of suit, including attorneys' fees; and,

    h.  Awarding North Atlantic such other and further relief as this Court deems just

and proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs, North Atlantic Operating Company, Inc. and National Tobacco Company,

L.P., demand a trial by jury on all issues so triable.

Dated: September 6, 2013
      New York, New York

Respectfully submitted,

**VENABLE LLP**

Marcella Ballard
Michael C. Hartmere
Robert L. Meyerhoff
VENABLE LLP
1270 Avenue of the Americas
New York, New York 10020
Tel. (212) 307-5500
Fax. (212) 307-5598
MBallard@Venable.com
MCHartmere@Venable.com
RLMeyerhoff@Venable.com

*Attorneys for Plaintiffs North Atlantic Operating
Company, Inc. and National Tobacco Company,
L.P.*

# **EXHIBIT A**

# United States Patent Office

610,530
Registered Aug. 16, 1955

## PRINCIPAL REGISTER
### Trademark

Ser. No. 645,385, filed Apr. 16, 1953



Braunstein Frere, Incorporated (Delaware corporation)
21 W. 18th St.
New York, N. Y.

For: CIGARETTE PAPER, in CLASS 8.

First used Aug. 14, 1901, and in commerce Aug. 14, 1901.

Owner of the trademark shown in Reg. No. 76,736 (expired).

Int. Cl.: 34

U.S. Cl.: 8

**U.S. Patent and Trademark Office**

Reg. No. 1,127,945

Reg. Dec. 10, 1979

## TRADEMARK
### Principal Register

# ZIG ZAG

Papeteries Braunstein (France corporation)
93, Boulevard Exelmans
Paris, France

For: Cigarette Papers — in Class 34. (U.S. Cl. 8).
First use Mar. 1903; in commerce Mar. 1903.
Owner of U.S. Reg. No. 610,530.

Ser. No. 68,676. Filed Nov. 11, 1975.

BETH CHAPMAN, Examiner

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

Reg. No. 2,169,540

## United States Patent and Trademark Office

Registered June 30, 1998

### TRADEMARK
### PRINCIPAL REGISTER



BOLLORE TECHNOLOGIES (FRANCE SOCIE-
TE ANONYME)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CLS. 2, 8, 9 AND 17).
FIRST USE 4-0-1961; IN COMMERCE
4-0-1961.
OWNER OF U.S. REG. NOS. 610,530, 1,127,946,
AND 1,247,856.

THE DRAWING CONSISTS OF A FANCIFUL
REPRESENTATION OF A MAN HOLDING A
CIGARETTE AND CIGARETTE PAPER PACK-
AGE ON WHICH THE WORDS "ZIG ZAG"
APPEAR.

SER. NO. 75-304,722, FILED 6-6-1997.

WILLIAM JACKSON, EXAMINING ATTOR-
NEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9 and 17

Reg. No. 2,169,549

**United States Patent and Trademark Office**   Registered June 30, 1998

## TRADEMARK
### PRINCIPAL REGISTER



BOLLORE TECHNOLOGIES (FRANCE SOCIE-
TE ANONYME)
ODET 29500 ERGUE GABERIC
COMMUNE D'ERGUE GABERIC, FRANCE

FOR: CIGARETTE PAPERS, IN CLASS 34
(U.S. CLS. 2, 8, 9 AND 17).
FIRST USE 3-0-1903; IN COMMERCE
3-0-1903.
OWNER OF U.S. REG. NOS. 610,330, 1,127,946,
AND 1,247,856.

THE DRAWING CONSISTS OF A FANCIFUL
REPRESENTATION OF A MAN HOLDING A
CIGARETTE AND CIGARETTE PAPER PACK-
AGE ON WHICH THE WORDS "ZIG ZAG"
APPEAR.

SER. NO. 75-304,818, FILED 6-8-1997.

WILLIAM JACKSON, EXAMINING ATTOR-
NEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101, and 102

Reg. No. 2,664,694

United States Patent and Trademark Office     Registered Dec. 17. 2002

## SERVICE MARK
## PRINCIPAL REGISTER



NORTH ATLANTIC OPERATING COMPANY.
  INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: DISTRIBUTORSHIPS IN THE FIELD OF
TOBACCO PRODUCTS AND SMOKERS ACCES-
SORIES, IN CLASS 35 (U..S. CLS. 100, 101 AND 102).

FIRST USE .-7-2002; IN COMMERCE 1-7-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "OPERATING COMPANY, INC.",
APART FROM THE MARK AS SHOWN.

SN 78-092.298. FILED .1-8-2001.

ARETHA MASTERSON, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9, and 17

Reg. No. 2,664,695

United States Patent and Trademark Office     Registered Dec. 17. 2002

## TRADEMARK
### PRINCIPAL REGISTER



NORTH ATLANTIC OPERATING COMPANY,
 INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: SMOKING TOBACCO, CIGARETTE PA-
PERS, CIGARETTE TUBES, LIGHTERS NOT OF
PRECIOUS METAL, CIGARETTE ROLLING MA-
CHINES, CIGARETTE INJECTION MACHINES, CI-
GARETTES, CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9
AND 17).

FIRST USE 1-7-2002; IN COMMERCE 1-7-2002.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "OPERATING COMPANY, INC.",
APART FROM THE MARK AS SHOWN.

SN 78-093,299, FILED 1-8-2001.

ARETHA MASTERSON, EXAMINING ATTORNEY

Int. Cl.: 34

Prior U.S. Cls.: 2, 8, 9, and 17

Reg. No. 2,610,473

## United States Patent and Trademark Office

Registered Aug. 20, 2002

## TRADEMARK
### PRINCIPAL REGISTER

## NORTH ATLANTIC OPERATING COMPANY

NORTH ATLANTIC OPERATING COMPANY, INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, 7TE FLOOR
NEW YORK, NY 10010

FOR: SMOKING TOBACCO, CIGARETTE PA-PERS, CIGARETTE TUBES, LIGHTERS NOT OF PRECIOUS METAL, CIGARETTE ROLLING MA-CHINES, CIGARETTE INJECTION MACHINES, CI-GARETTES, CIGARS, IN CLASS 34 (U.S. CLS. 2, 8, 9 AND 17).

FIRST USE 11-1-1997; IN COMMERCE 11-1-1997.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "OPERATING COMPANY", APART FROM THE MARK AS SHOWN.

SN 76-115,213, FILED 8-24-2000.

KAREN K. BUSH, EXAMINING ATTORNEY

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,635,446

United States Patent and Trademark Office      Registered Oct. 15, 2002

## SERVICE MARK
### PRINCIPAL REGISTER

## NORTH ATLANTIC OPERATING COMPANY

NORTH ATLANTIC OPERATING COMPANY,
INC. (DELAWARE CORPORATION)
257 PARK AVENUE SOUTH, SEVENTH FLOOR
NEW YORK, NY 10010

FOR: DISTRIBUTORSHIPS IN THE FIELD OF
TOBACCO PRODUCTS AND SMOKERS ACCES-
SORIES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 11-1-1997; IN COMMERCE 11-1-1997.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "OPERATING COMPANY", APART
FROM THE MARK AS SHOWN.

SER. NO. 78-09...,719, FILED 11-5-200...

PRISCILLA MILTON, EXAMINING ATTORNEY

# **EXHIBIT B**

# CERTIFICATE OF REGISTRATION



**OFFICIAL SEAL**

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

**REGISTER OF COPYRIGHTS**
*United States of America*

**FORM VA**
For a Work of the Visual Arts
UNITED STATES COPYRIGHT OFFICE



**VAu 464-855**

EFFECTIVE DATE OF REGISTRATION

Oct     11     2001
Month   Day    Year

---

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**TITLE OF THIS WORK ▼**

North Atlantic Operating Company, Inc. Design

**NATURE OF THIS WORK ▼** See Instructions

Graphic Design

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**Publication as a Contribution** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

If published in a periodical or serial give **Volume ▼** **Number ▼** **Issue Date ▼** **On Pages ▼**

---

**NAME OF AUTHOR ▼**

North Atlantic Operating Company, Inc.

**DATES OF BIRTH AND DEATH**
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☑ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
Domiciled in ▶ U.S.A.

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**

Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture   ☐ Map                ☐ Technical drawing
☑ 2-Dimensional artwork     ☐ Photograph         ☐ Text
☐ Reproduction of work of art ☐ Jewelry design   ☐ Architectural work

---

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼ Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**Author's Nationality or Domicile**
Name of Country
OR { Citizen of ▶
Domiciled in ▶

**Was This Author's Contribution to the Work**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Check appropriate box(es). **See Instructions**
☐ 3-Dimensional sculpture   ☐ Map                ☐ Technical drawing
☐ 2-Dimensional artwork     ☐ Photograph         ☐ Text
☐ Reproduction of work of art ☐ Jewelry design   ☐ Architectural work

---

**Year In Which Creation of This Work Was Completed** This information must be given in all cases.

2001 ◀ Year

**Date and Nation of First Publication of This Particular Work** Complete this information ONLY if this work has been published.

Month ▶   Day ▶   Year ▶   ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

North Atlantic Operating Company, Inc.
257 Park Avenue South
New York, New York 10010

**Transfer** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space

**APPLICATION RECEIVED**
OCT 11 2001
**ONE DEPOSIT RECEIVED**

**TWO DEPOSITS RECEIVED**
OCT 11 2001
**FUNDS RECEIVED**

DO NOT WRITE HERE OFFICE USE ONLY

---

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of ____ pages

| EXAMINED BY OW | | FORM VA |
|---|---|---|
| CHECKED BY | | |
| ☐ CORRESPONDENCE Yes | | FOR COPYRIGHT OFFICE USE ONLY |

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☐ No If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▼ **Year of Registration** ▼

**5**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a and 6b for a derivative work; complete only 6b for a compilation.

a. **Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates. ▼

**6**

**a**

See instructions before completing this space.

b. **Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼ Account Number ▼

**7**

**a**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent. Name/Address/Apt/City/State/ZIP ▼

Matthew G. Owen, Esq.
Greenebaum Doll & McDonald PLLC
3300 National City Tower, 101 South Fifth Street, Louisville, Kentucky 40202

**b**

Area code and daytime telephone number ▶ ( 502 ) 589-4200 Fax number ▶ ( 502 ) 540-2136

Email ▶ mgo@gdm.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

check only one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of North Atlantic Operating Company, Inc.
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

**8**

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Matthew G. Owen, Esq. Date ▶ October 10, 2001

Handwritten signature (X) ▼

X _____

Certificate will be mailed in window envelope to this address:

Name ▼ Matthew G. Owen, Esq.
Greenebaum Doll & McDonald PLLC
Number/Street/Apt ▼ 3300 National City Tower, 101 South Fifth Street
City/State/ZIP ▼ Louisville, Kentucky 40202

**9**

YOU MUST
• Complete all necessary spaces
• Sign your application in space 8

SEND ALL 3 ELEMENTS IN THE SAME PACKAGE
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

As of July 1, 1999, the filing fee for Form VA is $30.

MAIL TO
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—100,000 WEB REV: June 1999 ♻ PRINTED ON RECYCLED PAPER ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/71

**EXHIBIT C**





# **EXHIBIT D**

