UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
NORTH ATLANTIC OPERATING COMPANY, :
INC., AND NATIONAL TOBACCO                        :
COMPANY, L.P.,                                            :
                                                                  :                    **ORDER**
                              Plaintiffs,                :
                                                                  :              13-CV-4974 (ERK) (VMS)
                              -against-                    :
                                                                  :
EVERGREEN DISTRIBUTORS, LLC;           :
DOUGLAS EZRING; NEW LINE FOOD         :
DISTRIBUTION, INC.; HOOKAH PLUS, INC., :
d/b/a HOOKAH PLUS; HUSSEIN HACHEM;  :
MANHATTAN WHOLESALERS NY CORP.,     :
d/b/a MANHATTAN WHOLESALERS, INC;    :
MAJID RASHIDZADA; MAJID HAROON; 23rd :
ST. GENERAL MARKET & DELI CORP., d/b/a :
GENERAL MARKET & DELI; GOURMET       :
FOOD MARKET; NEW STAR TOBACCO,        :
INC., d/b/a NEW STAR TOBACCO; and JOHN :
DOES ONE through TEN, inclusive,          :
                                                                  :
                              Defendants.              :
---------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

        Before the Court[1] is the application by Plaintiffs North Atlantic Operating Company, Inc.

("NAOC") and National Tobacco Company, L.P. ("NTC") (collectively, "North Atlantic") for

limited, expedited discovery, pursuant to Federal Rules of Civil Procedure ("FRCP") 26, 30 and

34.  See Pls.' Proposed Findings of Fact & Conclusions of Law ("Pls.' Proposed Findings") 22,

Sept. 12, 2013, ECF No. 25.  This Court addressed Plaintiffs' concurrent request for a

preliminary injunction in separate Reports and Recommendations filed on September 27, 2013

---
[1] This request comes to the undersigned in connection with a request for a preliminary injunction
which was referred to the undersigned by District Judge Edward R. Korman.  The referral order
was signed and entered by District Judge Margo K. Brodie as the duty District Judge on
September 6, 2013.  Order Den. Ex Parte TRO, Den. Ex Parte Seizure, Den. Expedited Disc. &
Setting Order to Show Cause for Prelim. Inj. Hr'g ("Order to Show Cause") 2, Sept. 6, 2013,
ECF No. 6.

(the "R&R"), ECF No. 26 (concerning all Defendants except Evergreen Distributors, LLC), and September 30, 2013 (the "Evergreen R&R"), ECF No. 29 (concerning Evergreen Distributors, LLC). The Court now addresses Plaintiffs' request for expedited discovery.

For the following reasons, Plaintiffs' request for expedited discovery is granted in part and denied in part as to Defendants Evergreen Distributors, LLC ("Evergreen"),[2] Mr. Douglas Ezring ("Mr. Ezring"), Hookah Plus, Inc. ("Hookah Plus"), Mr. Hussein Hachem ("Mr. Hachem"), Manhattan Wholesalers NY Corp. ("Manhattan Wholesalers") and its owner Mr. Majid Rashidzada ("Mr. Rashidzada"). Plaintiffs' request for expedited discovery is denied as to Defendants New Line Food Distribution, Inc. ("New Line"), Mr. Majid Haroon ("Mr. Haroon"), 23rd St. General Market & Deli Corp. ("General Market"), Gourmet Food Market and New Star Tobacco, Inc. ("New Star Tobacco").[3] Plaintiffs have leave to renew their application for expedited discovery, if necessary, should additional relevant information concerning these Defendants become available.

In addition, Plaintiffs' request for a court order to issue a third-party subpoena against common carrier DHL for documents and information related to individuals or entities listed on a DHL shipping label is denied for the reasons stated below. Plaintiffs will also have leave to renew this application, if necessary, should additional relevant information become available.

___

[2] Defendant Evergreen, the Louisiana entity, was served on September 12, 2013, after the September 10, 2013 show cause hearing, and proof of service was filed on September 18, 2013. Proof of Service, Sept. 17, 2013, ECF No. 19. By Order dated September 20, 2013, this Court ordered Plaintiffs to serve Evergreen and all pro se defendants with the Order giving Evergreen until September 27, 2013 to appear in the action and respond to the request for preliminary relief. ECF Docket (Order, Sept. 20, 2013). To date, Evergreen has not appeared or responded.

[3] Defendants Evergreen, New Line and Mr. Ezring are referred to herein as the "Evergreen Defendants." Defendants Hookah Plus and Mr. Hachem are referred to herein as the "Hookah Plus Defendants." Defendants Manhattan Wholesalers, Mr. Rashidzada and Mr. Haroon are referred to herein as the "Manhattan Wholesalers Defendants." Defendants General Market, Gourmet Food Market and New Star Tobacco are referred to herein as the "Retailer Defendants."

2

This Order expresses no view as to whether Plaintiffs could pursue the requested discovery within the discovery framework of the Federal Rules, particularly, FRCP 16 and 26.

## I.        BACKGROUND

I assume the parties' familiarity with the factual and procedural background of this case, as it is set out in detail in the September 27, 2013 Report and Recommendation.

North Atlantic sells and distributes cigarette paper products in the United States, including ZIG-ZAG® brand cigarette paper products.  North Atlantic alleges that the Defendants unlawfully distributed counterfeit ZIG-ZAG® 1 ¼ Size French orange cigarette papers (hereinafter, "ZIG-ZAG® Orange") from locations within this judicial district.

Counsel for Mr. Ezring and a principal for General Market appeared at the September 10, 2013 show cause hearing, see Show Cause Hr'g Tr. ("Hr'g Tr."), Sept. 10, 2013, ECF No. 7, and all Defendants have been served with the Summons and relevant papers in this case.  See Hr'g Tr. 4:24-6:2 (describing service on each Defendant); ECF Nos. 9-19 & 22-23 (Proofs of Service and Affidavits of Service).  Mr. Haroon filed an Answer on September 30, 3013.  Haroon Answer, Sept. 30, 2013, ECF No. 27.  An attorney for Manhattan Wholesalers and Mr. Rashidzada filed a Notice of Appearance on October 4, 2013.  Notice of Appearance, Oct. 4, 2013, ECF No. 33.  No other Defendants have appeared.

Certain Defendants have voluntarily provided discovery to Plaintiffs.  The principal for General Market spoke with Plaintiffs' counsel during the show cause hearing and provided Plaintiffs with documents.  Hr'g Tr. 93:6-94:11.  Mr. Blaine Salter ("Mr. Salter"), a principal of Evergreen, and Mr. Gregory Disotell ("Mr. Disotell"), an agent or representative of Evergreen, offered their cooperation and documents to North Atlantic after the show cause hearing.  See Decl. of John M. Hood III in Further Supp. of Mot. for Order Allow'g Expedited Disc. & Order

to Show Cause for Prelim. Inj. ("Hood Supp. Decl.") ¶ 10, Sept. 23, 2013, ECF No. 21.  Mr. John M. Hood III ("Mr. Hood"), the Director of Operations at L.S.S. Consulting, Inc. ("LSS"), a Michigan-based private investigation firm hired by Plaintiffs to investigate alleged counterfeiting, also participated in an in-person interview of Mr. Ezring on September 19, 2013. Id. ¶¶ 2 & 11.

During that interview, Mr. Hood and Mr. Ezring discussed a DHL shipping label that is addressed to Mr. Ezring at his Port Washington, New York address, from "FWNM NPNP CO LTD, Jerry A20, Bak Industry Park Yuan, Ling Street Shenzhen City, Guang Dong Chain, Hong Kong, Hong Kong."  See Hood Supp. Decl. ¶¶ 12-13 & Ex. B.  Mr. Hood stated, in a footnote, that this shipping label "is not offered as proof of Plaintiffs' claims, but rather to demonstrate the manner and means by which the counterfeit ZIG-ZAG® Orange described above was distributed into the United States."  Id. ¶ 12 n.2.[4]  Mr. Hood's Supplemental Declaration provides no further information concerning the shipping label.

## II.    DISCUSSION

Plaintiffs seek expedited discovery against all Defendants to advance their investigation into alleged ongoing sales of counterfeit ZIG-ZAG® Orange by these Defendants and possibly others, and to avoid the irreparable injury that would result from the destruction of evidence.  At the show cause hearing and by letter, counsel for Mr. Ezring raised objections to the breadth of Plaintiffs' document requests and the proposed seven-day deadline for Defendants' responses. Hr'g Tr. 95:1-96:5; Letter from Mr. Gregory A. Clarick to the Hon. Vera M. Scanlon, dated

---

[4] It is not clear what Mr. Hood is referring to by "the counterfeit ZIG-ZAG® Orange described above." Id.  It may be that Mr. Hood is referring to the counterfeit product in the photograph he received from Mr. Disotell, see id. ¶ 10(b) & Ex. A, or that he is referring to the 2,399 cartons he recovered from Mr. Ezring's Port Washington, New York address. Id. at ¶ 6.  It is also possible that the recovered cartons represent some part of the twenty-four shipping boxes in the photograph.

September 16, 2013 (the "Ezring Letter") 2.[5]  No other objections to Plaintiffs' expedited

discovery request have been raised.

In addition, Plaintiffs included in Mr. Hood's Supplemental Declaration a request for

leave to file a third-party subpoena against DHL.  Hood Supp. Decl. ¶ 13.  Defendants have

raised no objections to this request.

### a.  The Legal Standard for Expedited Discovery

Pursuant to FRCP 26(d)(1), "[a] party may not seek discovery from any source before the

parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by

stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  In counterfeiting cases, expedited

discovery may need to be granted because discovery on "an expedited basis may very well lead

to evidence of continuing infringement by this defendant or others; it may also lead to the

discovery of future plans to infringe or the discovery of additional infringing merchandise."

Twentieth Century Fox Film Corp. v. Mow Trading Corp., 749 F. Supp. 473, 475 (S.D.N.Y.

1990).

"Courts in this district have applied a 'flexible standard of reasonableness and good

cause' in determining whether to grant a party's expedited discovery request."  Digital Sin, Inc.

v. Does 1-176, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting Ayyash v. Bank Al-Madina, 233

F.R.D. 325, 326-27 (S.D.N.Y. 2005)); see Pearson Educ., Inc. v. Doe, No. 12 Civ. 4786 (BSJ)

(KNF), 2012 WL 4832816, at *3 (S.D.N.Y. Oct. 1, 2012) (listing cases).  This reasonableness

test "'requires the party seeking the discovery to prove that the requests are reasonable under the

circumstances.'"  KeyBank, Nat. Ass'n v. Quality Payroll Sys., Inc., No. 06 Civ. 3013 (JS)

(AKT), 2006 WL 1720461, at *4 (E.D.N.Y. June 22, 2006) (quoting Better Packages, Inc. v.

---

[5] As stated in the September 27, 2013 Report and Recommendation, Mr. Ezring's counsel should
file this letter on ECF.  R&R at 3 n.4.

Zheng, No. 05 Civ. 4477 (SRC), 2006 WL 1373055, at *2 (D.N.J. May 17, 2006)).  Courts may

find that there is good cause when "the need for expedited discovery, in consideration of the

administration of justice, outweighs the prejudice to the responding party."  Semitool, Inc. v.

Tokyo Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002).  For example, in Ayyash, the

court found good cause for expedited discovery concerning defendants' assets where plaintiff

"made a strong evidentiary showing of the substantiality of his claims," and where defendants

"have both incentive and capacity to hide [the assets at issue]."  Ayyash, 233 F.R.D. 325, 327

(S.D.N.Y. 2005).

When considering motions for expedited discovery, courts in this district have also

utilized the four-factor test articulated in Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982).

See Litwin v. OceanFreight, Inc., 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) (applying both the

reasonableness and good cause test and the Notaro test); KWG Partners, LLC v. Sigel, No. 11

Civ. 2890 (NGG) (JMA), 2011 WL 2837437, at *1-2 (E.D.N.Y. July 14, 2011) (same); Cecere v.

Cnty. of Nassau, 258 F. Supp. 2d 184, 186 (E.D.N.Y. 2003) (applying only the Notaro test).[6]

The Notaro test requires considering: "(1) irreparable injury, (2) some probability of success on

the merits, (3) some connection between the expedited discovery and the avoidance of the

irreparable injury, and (4) some evidence that the injury that will result without expedited

discovery looms greater than the injury that the defendant will suffer if the expedited relief is

---

[6] But see OMG Fid., Inc. v. Sirius Techs., Inc., 239 F.R.D. 300, 303 (N.D.N.Y. 2006) (stating that the four-factor test in Notaro "has greatly proliferated and literally taken on a life of its own, with many courts adhering to its dictates despite significant alteration of the discovery landscape in 2000"; also finding that the reasoning of the Notaro test would not apply where "[m]ore than thirty days have elapsed since the plaintiff filed suit" and the non-moving party was familiar with the claims and defenses); § 2046.11993 Discovery Moratorium Pending Discovery Plan, 8A Fed. Prac. & Proc. Civ. § 2046.1 (3d ed.) ("Some courts have also treated the question in terms similar to the criteria for a preliminary injunction, although it must be obvious that permission to commence discovery is a much less aggressive order than a preliminary injunction.").

granted." Notaro, 95 F.R.D. at 405.  In comparison to the Notaro test, the reasonableness

standard is considered "more liberal," Better Packages, Inc., 2006 WL 1373055, at *3, and

"more flexible," Stern v. Cosby, 246 F.R.D. 453, 457 (S.D.N.Y. 2007).   The good cause

standard can also be described as more flexible than the Notaro test, as the courts in Ayyash and

Semitool, Inc. considered similar factors when analyzing good cause, but did not specifically

limit their inquiry to Notaro's considerations.  See Semitool, Inc., 208 F.R.D. at 276 (finding it

inconsistent with FRCP 1 and 26(d) that, "[t]he Notaro factors would not accommodate

expedited discovery in circumstances even where such discovery would facilitate case

management and expedite the case with little or no burden to the defendant simply because the

plaintiff would not suffer 'irreparable injury.'").

      The prudent course here appears to be to blend the two tests, the Notaro four-factor test

and the reasonableness and good cause standard.[7]  The Notaro factors focus the analysis on the

good cause aspect of the blended analysis by considering those facts that would justify a general

setting aside of the usual FRCP timeline for discovery in favor of a timeline adapted to the

exigencies of the circumstances.  In particular, the third and fourth factors of the Notaro test are

relevant to a finding of good cause.  The reasonableness analysis considers the practical

implications of the request – for example, can the requested materials physically be gathered on

the proposed timeline – as well as whether the requested discovery will indeed assuage the

---

[7] See generally New York v. Mountain Tobacco Co., No 12. Civ. 6276 (ADS) (ETB), 2013 WL
3488262, at *6 (E.D.N.Y. July 11, 2013) (quoting Ayyash, 233 F.R.D. at 326-27, for the
proposition that "employing a preliminary-injunction type analysis to determine entitlement to
expedited discovery makes little sense, especially when applied to a request to expedite
discovery in order to prepare for a preliminary injunction hearing"); Standard Inv. Chartered,
Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., No. 07 Civ. 2014 (SWK), 2007 WL 1121734, at *5
(S.D.N.Y. Apr. 11, 2007) ("Notaro deals with specific circumstances, notably a request for
expedited depositions in a politically volatile situation, that are not present here."); see also
Stern, 246 F.R.D. at 457 (stating that the reasonableness test "is the better approach").

movant's desire to limit harm that a delay might cause.  See Pearson Educ., Inc., 2012 WL 4832816, at *4 ("The Court will apply 'the flexible standard of reasonableness and good cause,' adopted in Ayyash, 233 F.R.D. at 327, and will also consider any factors relevant to the circumstances of this case . . . .").

### b.  Plaintiffs' Request for Expedited Discovery

With the modifications to Plaintiffs' request described below, North Atlantic meets its burden for a grant of expedited discovery as to Evergreen, Mr. Ezring, the Hookah Plus Defendants, Manhattan Wholesalers and Mr. Rashidzada, but not as to New Line, Mr. Haroon and the Retailer Defendants.

### 1.  Good Cause

Plaintiffs established good cause for expedited discovery against some, but not all, of the Defendants.  As set out in the Reports and Recommendations, North Atlantic presented credible evidence that the actions it attributed to Defendants were causing irreparable harm to North Atlantic, including loss of goodwill, negative effects on profitability and damage to its relationships with its direct clients/customers.  See R&R at 21-23, Evergreen R&R at 9; KeyBank, Nat. Ass'n, 2006 WL 1720461, at *4 (plaintiff demonstrated irreparable harm based on, inter alia, harm to "commercial reputation in the marketplace").

This evidence included the testimony and sworn declaration of Mr. Clark Sturdivant ("Mr. Sturdivant"), the Sales Director – Metro Accounts at NTC, who is familiar with Plaintiffs' brands, trademarks, exclusive rights, sales and customer relationships.  Decl. of Clark Sturdivant in Supp. of Pls.' Mot. ("Sturdivant Decl.") ¶¶ 2-4, 26-32, Sept. 5, 2013, ECF No. 1-4; Hr'g Tr. 79:18-80:2, 81:1-84:9.

However, as to certain Defendants, Plaintiffs neither showed some probability of success on the merits nor provided sufficient evidence that those Defendants' actions had caused or would cause the irreparable harm at issue.  To establish their claims for trademark infringement or false designation of origin, a plaintiff must show that (1) its mark is entitled to protection, and (2) the use of its mark by the defendant is likely to confuse consumers as to the sponsorship or origin of the goods.  See Virgin Enters. Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003); Chanel, Inc. v. Xiao Feng Ye, No. 06 Civ. 3372 (CPS) (SMG), 2007 WL 2693850, at *2 (E.D.N.Y. Sept. 12, 2007) (claims for trademark infringement and false designation of origin are analyzed using the same two-prong test); see also R&R 17-21, Evergreen R&R 8-9.

Plaintiffs established their use and ownership of the rights to the trademarks at issue.  See Hr'g Tr. 73:8-75:7; see also Sturdivant Decl. ¶¶ 6-7, 11 & Exs. A-B.  Plaintiffs also offered sufficient evidence of the unauthorized use of those trademarks by Evergreen and Mr. Ezring[8]; the Hookah Plus Defendants[9]; and Manhattan Wholesalers and Mr. Rashidzada.[10]  The counterfeit ZIG-ZAG® Orange, which is nearly identical to authentic ZIG-ZAG® Orange in appearance, is inherently likely to cause customer confusion.  See Hr'g Tr. 24:21-25:5, 25:24-27:3, 40:7-43:20; Sturdivant Decl. ¶ 13.  Plaintiffs also submitted evidence of actual customer confusion in the form of calls to its hotline about possibly counterfeit goods.  See Hr'g Tr. 79:18-80:2; Sturdivant Decl. ¶ 26.  Thus, Plaintiffs established some likelihood of success on the merits

---

[8] See Hr'g Tr. 24:11-32:14, 48:16-49:5, 52:16-55:13; Decl. of John M. Hood III in Supp. of Pls.' Mot. ("Hood Decl.") ¶¶ 6-17, Sept. 5, 2013, ECF No. 1-3; Hood Supp. Aff. ¶¶ 6-8; Pls.' Hr'g Ex. A, Sept. 10, 2013, ECF No. 24-1; Pls.' Hr'g Ex. B, Sept. 10, 2013, ECF Nos. 24-2; Decl. of Steven T. Gnadinger in Supp. of Pls.' Mot. ("Gnadinger Decl.") ¶¶ 7-8, 10 & Exs. A-B, Sept. 5, 2013, ECF No. 1-2; Sturdivant Decl. ¶¶ 21-23.

[9] See Hr'g Tr. 33:5-23, 37:19-43:20, 50:7-52:1; Hood Decl. ¶¶ 18-29; Sworn Affidavit of Meelan Hanna ("Hanna Aff."), August 30, 2013, ECF No. 24-10; Gnadinger Decl. ¶¶ 11-13 & Ex. D; Sturdivant Decl. ¶¶ 20-23.

[10] See Hr'g Tr. 44:6-14; Hood Decl. ¶¶ 36-39.

9

as to their claims against Evergreen, Mr. Ezring, the Hookah Plus Defendants, Manhattan

Wholesalers and Mr. Rashidzada.  See R&R at 17-21; Evergreen R&R at 8-9.

In contrast, North Atlantic did not offer evidence sufficient to show even some likelihood

of success on the merits against New Line.  North Atlantic's strongest evidence tying New Line

to alleged unlawful activity is that Mr. Ezring's telephone number and New Line are registered

to the same address; this link is unpersuasive because that address may be a residential and/or

business address for Mr. Ezring's family members.  See Hood Decl. ¶ 12; Hr'g Tr. 28:1-10,

57:3-7; Pls.' Hr'g Ex. A; see also R&R at 19.

Concerning Mr. Haroon, the only evidence presented of his involvement is that he is a

sales agent for Manhattan Wholesalers.  See Hr'g Tr. 44:11-14; R&R at 19.[11]  To the extent Mr.

Haroon is an agent of Manhattan Wholesalers, his actions as such will be covered by an Order

against Manhattan Wholesalers, but there is insufficient evidence to warrant expedited discovery

against Mr. Haroon individually.

As discussed in the September 27, 2013 Report and Recommendation, Plaintiffs

presented little sworn testimony and no physical evidence specific to the Retailer Defendants'

involvement in selling or distributing counterfeit product, other than Mr. Hood's very brief

testimony concerning controlled buys at their locations which, according to the Complaint,

occurred on May 29, 2012, over a year ago.  See Compl. ¶¶60-77; Hr'g Tr. 44:15-48:5, 65:2-24,

68:19-69:22; R&R 20.

Moreover, as explained in the September 27, 2013 Report and Recommendation, undue

delay on the part of the movant in seeking a preliminary injunction will weigh against a finding

---

[11] Although in his Answer, Mr. Haroon denied any connection to Manhattan Wholesalers, see
Haroon Answer ¶ 5, he submitted no declaration or other evidence to rebut the testimony offered
by Plaintiffs.

of irreparable harm.  R&R at 22-23.[12]  That reasoning applies equally to a request for expedited

discovery.  Plaintiffs' fifteen-month delay in seeking relief against the Retailer Defendants belies

both their claim that the Retailer Defendants' actions caused or will cause irreparable harm and

Plaintiffs' need for expedited discovery against those Defendants.  In contrast, Plaintiffs

presented evidence of recent participation in unlawful activity by Evergreen and Mr. Ezring[13];

the Hookah Plus Defendants[14]; and Manhattan Wholesalers and Mr. Rashidzada.[15]  Plaintiffs

therefore did not unduly delay in seeking expedited discovery against these Defendants.

       Plaintiffs' evidence linking the proposed expedited discovery and the avoidance of

irreparable injury also weighs in favor of finding good cause for granting Plaintiffs' request.

This connection can only be drawn as to Defendants for whom Plaintiffs presented sufficient

evidence of trademark infringement and false designation of origin: Evergreen, Mr. Ezring, the

---

[12] See Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (vacating preliminary injunction in a trademark infringement action based, in part, on delay in commencing action; delay was ten weeks after plaintiffs' direct knowledge and nine months after indirect knowledge of infringement threat); Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc., 454 F. Supp. 2d 62, 68 (E.D.N.Y. 2006) ("[A] plaintiff's undue delay in seeking injunctive protection can preclude, as a matter of law, the finding that the plaintiff will suffer irreparable harm if the provisional remedy is not granted."); but see Marks Org., Inc. v. Joles, 784 F. Supp. 2d 322, 332-34 (S.D.N.Y. 2011) (courts may excuse justifiable delay).

[13] Plaintiffs presented hearsay evidence of late August and/or early September 2013 telephone calls from Evergreen to a Texas wholesaler, during which Evergreen attempted to sell thousands of cartons of possibly counterfeit ZIG-ZAG® Orange.  See Hr'g Tr. 48:16-49:5, 52:16-54:17; Hood Decl. ¶¶ 14-17.  In addition, after the September 10, 2013 show cause hearing, Mr. Hood recovered 2,399 cartons of purportedly counterfeit ZIG-ZAG® Orange from Mr. Ezring's address.  See Hood Supp. Aff. ¶¶ 6-8.

[14] According to Mr. Hood, as recently as mid-August 2013, the Hookah Plus Defendants were in active negotiations with undercover North Atlantic representatives supervised by Mr. Hood to sell hundreds of additional cartons of counterfeit ZIG-ZAG® Orange.  See Hr'g Tr. 50:7-52:1; Hood Decl. ¶¶ 24-29.

[15] Within the past several months, North Atlantic investigators under Mr. Hood's supervision observed cartons of suspected counterfeit ZIG-ZAG® Orange at the Manhattan Wholesalers Defendants' address; these cartons were not present on subsequent visits to that location.  Hood Decl. ¶¶ 36-39.

Hookah Plus Defendants, Manhattan Wholesalers and Mr. Rashidzada.  Plaintiffs' contention

that counterfeiters in general may hide or destroy relevant evidence, see Hood Decl. ¶¶ 40-46,

comports with common sense.  For example, as to Manhattan Wholesalers, Plaintiffs' initial

investigatory visit revealed counterfeit product was available, but it was no longer present on a

second visit.  See Hr'g Tr. 44:6-14; Hood Decl. ¶¶ 36-39.  That concern is particularly relevant

to this case where Evergreen and the Hookah Plus Defendants have failed to appear.  Moreover,

North Atlantic is actively pursuing an investigation into the alleged counterfeiting.  See Hood

Supp. Decl.  Expedited discovery will allow North Atlantic to act quickly to identify the sources

and locations of counterfeit ZIG-ZAG® Orange, and may provide Plaintiffs the information

necessary to identify and stop continued unlawful activity, if any, by Defendants.  See Hood

Decl. ¶¶ 40-43; Twentieth Century Fox Film Corp., 749 F. Supp. at 475.   However, as written,

Plaintiffs' request is too broad to draw a connection between expedited discovery and avoiding

irreparable injury; Plaintiffs' request requires the revisions discussed below.

      Finally, the comparative hardships to the Parties from granting or denying Plaintiff's

request are in Plaintiffs' favor.  Discovery inherently places a burden on the responding party,

but in this case, that hardship is outweighed by the harm that may result to Plaintiffs if their

request is denied.  Indeed, given the modifications to Plaintiffs' request that this Court will

require, the burden on the responding Defendants will be minimal. Thus, Plaintiffs have

established good cause for expedited discovery against Evergreen, Mr. Ezring, the Hookah Plus

Defendants, Manhattan Wholesalers and Mr. Rashidzada.

### 2.  The Reasonableness Test

      Plaintiffs' proposed expedited discovery request – the specific provisions of which are

contained within Plaintiffs' proposed order for a preliminary injunction, see Pls.' Proposed

Findings 22-26 ¶ 5, and Plaintiffs' First Request for the Production of Documents ("Plaintiffs'

Document Requests" or "Pls.' Doc. Reqs."), Sept. 10, 2013, ECF No. 24-12 – fails the

reasonableness test because it is overbroad, overly burdensome and not reasonable under the

circumstances. See Irish Lesbian & Gay Org. v. Giuliani, 918 F. Supp. 728, 730-31 (S.D.N.Y.

1996) (denying plaintiff's application for expedited discovery as "not reasonably tailored to the

time constraints under which both parties must proceed" where plaintiff was denied a parade

permit in 1996 and requested expedited discovery for "all documents relating to permit

applications, whether granted or denied, for any parade since 1985."); see generally Litwin, 865

F. Supp. 2d at 402 ("The sheer volume and breadth of plaintiff's discovery requests further

renders them unreasonable . . . ."). As discussed below, several of Plaintiffs' document requests

seek "all documents" concerning broad topic areas not limited to ZIG-ZAG® products. These

document requests are particularly problematic because Plaintiffs request a seven-day deadline

and no limitation as to the responsive time period. With the below modifications, Plaintiffs'

expedited discovery request satisfies the reasonableness requirement as to Evergreen, Mr.

Ezring, the Hookah Plus Defendants, Manhattan Wholesalers and Mr. Rashidzada.

  The proposed seven-day deadline for the document requests, see Pls.' Proposed Findings

24, is extended to ten days. See Ezring Letter 2. Ten days is a more reasonable time frame for

responding to these requests which, even with modification, are quite detailed. In addition,

Defendants may still need to retain legal counsel.

  Plaintiffs' Document Requests are revised as follows. No modification is necessary to

Exhibit A, which provides relevant definitions. See Pls.' Doc. Reqs. Ex. A. However,

Paragraph 8 of Exhibit B, which provides relevant instructions, is not reasonable under the

circumstances of expedited discovery. See Pls.' Doc. Reqs. Ex. B ¶ 8. Paragraph 8 states,

13

"Unless otherwise indicated, the time period applicable to these requests is from the date of the formation of the Defendant upon whom these requests are served to the present." Id.  It is not reasonable to require Defendants to, within ten days, locate and search documents over so broad a time period.  Moreover, Plaintiffs have not established how they will avoid irreparable injury based on information that may be many years old.  See, e.g., Union Cosmetic Castle, Inc., 454 F. Supp. 2d at 68 (undue delay may preclude a finding of irreparable harm).  In Plaintiffs' Document Request No. 2, they suggest a time period of "the immediately preceding 24 months." See Pls.' Doc. Reqs. No. 2.  This time period will apply to every document request, because it will not be unduly burdensome on Defendants and it is reasonably calculated to lead to discovery relevant to avoiding irreparable harm.  Therefore, Paragraph 8 of Exhibit B is revised to: "The time period applicable to these requests is the immediately preceding 24 months."

Plaintiffs' Document Request No. 1 seeks, "All documents and communications that You would otherwise be obligated to disclose under Federal Rule of Civil Procedure 26(a)."  Pls.' Doc. Reqs. No. 1.  FRCP 26(a) requires a party to provide a copy or description of "all documents . . . . [it] may use to support its claims or defenses."  Fed. R. Civ. Proc. 26(a)(1)(A)(ii).  This broad information is not necessary for expedited discovery, nor is the request reasonable under even a ten-day deadline.  Therefore, Document Request No. 1 will be modified to: "The names, addresses, and telephone numbers of individuals likely to have discoverable information, as required by FRCP 26(a)(1)(A)."

Plaintiffs' Document Requests Nos. 2 and 3 require no modification, other than to remove the time period specified in Plaintiffs' Document Request No. 2, as that time period now applies to each request.  See Pls.' Doc. Reqs. Nos. 2-3.

Plaintiffs' Document Request No. 4 seeks "All documents and communications concerning any locations where You store or have stored counterfeit or genuine ZIG-ZAG® Cigarette Paper Products, either temporarily or on a long-term basis, including but not limited to: warehouses, storage/self-storage facilities, residences, businesses, and/or vehicles; whether leased, rented, or owned by You, or otherwise under Your possession or control." Pls.' Doc. Reqs. No. 4. This request is overly broad. Plaintiffs do not need every document concerning each location, but rather an identification of the locations and documents specific to ZIG-ZAG® cigarette paper products. Therefore, the request is modified to read, "Documents sufficient to identify any locations where You store or have stored counterfeit or genuine ZIG-ZAG® Cigarette Paper Products, either temporarily or on a long-term basis, including but not limited to: warehouses, storage/self-storage facilities, residences, businesses, and/or vehicles; whether leased, rented, or owned by You, or otherwise under Your possession or control. This request shall include all documents and communications concerning the storage, moving, or removal of counterfeit or genuine ZIG-ZAG® Cigarette Paper Products."

Plaintiffs' Document Request No. 5 seeks "All documents and communications concerning the location(s) and manner(s) in which You store records (hardcopy or electronically stored) in connection with the operation of You/Your business, including but not limited to: warehouses, storage facilities, residences, businesses, or vehicles; or on computers and other computing devices, computing networks/servers/drives, or 'cloud computing' systems, etc." Pls.' Doc. Reqs. No. 5. As with the preceding document request, Plaintiffs do not need every document concerning record storage, but rather an identification of storage methods. In addition, this request is narrowed to information relating to ZIG-ZAG® cigarette paper products. Therefore, the request is modified to read, "Documents sufficient to identify the location(s) and

manner(s) in which You store records (hardcopy or electronically stored) related to ZIG-ZAG®

Cigarette Paper Products, including but not limited to: warehouses, storage facilities, residences,

businesses, or vehicles; or on computers and other computing devices, computing

networks/servers/drives, or 'cloud computing' systems, etc."

Plaintiffs' Document Request No. 6 seeks "All documents and communications

concerning the importation of Cigarette Paper Products, in general, and ZIG-ZAG® Cigarette

Paper Products, in particular." Pls.' Doc. Reqs. No. 6. Plaintiffs have not demonstrated that

expedited discovery concerning cigarette paper products generally is warranted. Therefore, the

request is modified to read, "All documents and communications concerning the importation of

ZIG-ZAG® Cigarette Paper Products."

Plaintiffs' Document Request No. 7 seeks "All documents and communications between

You and any of the other defendant(s) in the above-captioned action." Pls.' Doc. Reqs. No. 7.

For the Defendants who share a business relationship – such as the Hookah Plus Defendants –

this overbroad request would require discovery of every document and communication they have

exchanged. Therefore, the request is modified to read, "All documents and communications

concerning ZIG-ZAG® Cigarette Paper Products between You and any of the other defendant(s)

in the above-captioned action."

Concerning New Line, Mr. Haroon and the Retailer Defendants, Plaintiffs' request

cannot satisfy the reasonableness test for the same reasons Plaintiffs cannot establish good cause:

there is insufficient evidence of New Line's and Mr. Haroon's (as separate from Manhattan

Wholesalers') involvement, and the fifteen-month gap between the Retailer Defendants' alleged

involvement and Plaintiffs' request strongly suggests that expedited discovery is not necessary as

to those defendants. Thus, Plaintiffs' request to depose New Line, see Pls.' Proposed Findings

25, is denied because of the small likelihood of Plaintiffs' success on the merits concerning New Line.  However, because of his relationship with Manhattan Wholesalers, Plaintiffs may depose Mr. Haroon on an expedited basis concerning his actions on behalf of that entity.

### c.  Plaintiffs' Request for Leave to Subpoena DHL

North Atlantic requests leave to subpoena third-party DHL for "documents and other information related to the individuals/entities appearing on [the DHL shipping label]."  Hood Supp. Decl. ¶ 13.  FRCP 45 permits the issuance of third-party subpoenas, with notice to each party. Fed. R. Civ. Proc. 45.  However, as discussed above, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order."  Fed. R. Civ. Proc. 26(d)(1); see K-Beech, Inc. v. Does 1-29, No. 11 Civ. 3331 (JTB) (ETB), 2011 WL 4401933, at *1 (E.D.N.Y. Sept. 19, 2011) (discussing standards for pre-discovery subpoenas); Desilva v. N. Shore-Long Island Jewish Health Sys. Inc., No. 10 Civ. 1341 (JFB) (ETB), 2010 WL 3119629, at *1 (E.D.N.Y. Aug. 9, 2010) (same).

Requests for leave to issue to a subpoena to a third-party prior to the required FRCP 26(f) conference are subject to the same "reasonableness" and good cause test described above concerning expedited discovery.  See adMarketplace, Inc. v. Tee Support, Inc., No. 13 Civ. 5635 (LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013) ("Courts in this district have found 'good cause' for expedited discovery to determine the identity of John Doe defendants where the plaintiff has stated a prima facie case and is unable to identify the defendants without a court-ordered subpoena.").[16]

---

[16] But see Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010) (applying a five-factor test from Sony Music Entertainment Inc. v. Does 1-40, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004), to determine if a motion to quash a subpoenas served on internet service providers to identify individual Internet users' identities); Malibu Media, LLC v. John Does 1-10, No. 12 Civ. 1146 (JS) (ETB), 2012 WL 1020455, at *1 (E.D.N.Y. Mar. 26, 2012) (applying

North Atlantic has not provided sufficient evidence to support its request for leave to issue a third-party subpoena prior to the FRCP 26(f) conference.  Mr. Hood's Supplemental Declaration simply states that he discussed the DHL shipping label with Mr. Ezring.  Hood Supp. Decl. ¶ 12.  There is a vague reference to this shipping label being pertinent to the distribution of counterfeit product into the United States, but the same sentence suggests the shipping label may not be pertinent to proving Plaintiffs' claims.  Id. ¶ 12 n.2 (The shipping label exhibit "is not offered as proof of Plaintiffs' claims, but rather to demonstrate the manner and means by which the counterfeit ZIG-ZAG® Orange described above was distributed into the United States.").

North Atlantic has not established the need for the proposed subpoena to issue before the start of discovery.  As an Initial Conference is scheduled in this action for October 10, 2013 at 11:30 A.M., the Parties will soon be permitted to issue subpoenas without a court order.  North Atlantic has not demonstrated a need for third-party discovery concurrent with the considerable opportunities for expedited discovery being granted by this Order.  Moreover, it is not clear from Mr. Hood's Supplemental Declaration whether subpoenaing DHL concerning individuals or entities named on its shipping label would lead to identifying other defendants or other information relevant to Plaintiffs' claims.  Plaintiffs have alternate means of investigating the named individuals or entities, such as through information provided by Mr. Ezring.  In addition, Plaintiffs have not submitted, for this Court's review, the requests "for documents and other information," id. ¶ 13, that they intend to make.  Therefore, Plaintiffs' request for leave to subpoena DHL is denied at this time, with leave to renew should additional, relevant information become available.

---

the five-factor test from Sony Music Entm't Inc. in deciding an unopposed motion for leave to issue a third-party subpoena pre-discovery).

III.     **CONCLUSION**

For the foregoing reasons, Plaintiffs' request for expedited discovery is granted in part and denied in part as follows:

1.      Pursuant to FRCP 26, 30 and 34, North Atlantic may immediately serve discovery requests upon Evergreen, Mr. Ezring, the Hookah Plus Defendants, Manhattan Wholesalers and Mr. Rashidzada (the "Expedited Discovery Defendants") in the form submitted at the September 10, 2013 preliminary injunction hearing, as amended below, including:

      a.     <u>North Atlantic's First Request for the Production of Documents to Defendants</u>, which contains seven (7) requests for the production of documents (as amended below) to all Defendants, pursuant to FRCP 34 and the Local Rules ("North Atlantic's First Set of Document Requests"); and

      b.     <u>Notices</u> of North Atlantic's intent to take depositions upon oral examination before a person authorized to administer oaths, to be served upon:

          i.     Evergreen Distributors, LLC;

         ii.     Mr. Douglas Ezring;

       iii.     Hookah Plus, Inc., d/b/a Hookah Plus;

       iv.     Mr. Hussein Hachem;

        v.     Manhattan Wholesalers NY Corp., d/b/a Manhattan Wholesalers, Inc.;

       vi.     Mr. Majid Rashidzada; and

      vii.     Mr. Majid Haroon, concerning his relationship with and actions on behalf of Manhattan Wholesalers.

The Expedited Discovery Defendants shall serve responses to North Atlantic's First Set of Document Requests within ten (10) days of service thereof; and depositions of the above-

identified individuals/entities may commence as early as ten (10) days thereafter.  Absent further Order of this Court, the notice period for other depositions shall be such as is prescribed by the FRCP and case law interpreting them.

2.      Plaintiffs' First Request for the Production of Documents to Defendants is modified as follows:

Documents Requested

1.      The names, addresses, and telephone numbers of individuals likely to have discoverable information, as required by FRCP 26(a)(1)(A).

2.      All documents and communications concerning the purchase, sale, or other distribution of ZIG-ZAG® Cigarette Paper Products (as defined in the Complaint), whether or not a sale actually occurred, including but not limited to all correspondence with, and any receipts/invoices to or from, any person or entity.

3.      All documents and communications concerning the process by which You buy or otherwise obtain ZIG-ZAG® Cigarette Paper Products, including but not limited to documents and communications (i) displaying the name, address, contact telephone number, and/or other identifying information of any person or entity You contact in order to buy or otherwise obtain ZIG-ZAG® Cigarette Paper Products; (ii) identifying or describing the location(s) of meetings where You purchase or otherwise obtain ZIG-ZAG® Cigarette Paper Products; (iii) identifying or describing how orders for ZIG-ZAG® Cigarette Paper Products are received and/or processed, either by You, or any other person or entity, and (iv) identifying or describing any third-parties involved in any way in the purchase, sale, and/or distribution of ZIG-ZAG® Cigarette Paper Products, including, without limitation: banks and other payment processors; couriers, third-party

20

delivery services, other common carriers, and/or freight forwarders; and any companies/vendors providing wire or electronic fund transfer capabilities.

4.      Documents sufficient to identify any locations where You store or have stored counterfeit or genuine ZIG-ZAG® Cigarette Paper Products, either temporarily or on a long-term basis, including but not limited to: warehouses, storage/self-storage facilities, residences, businesses, and/or vehicles; whether leased, rented, or owned by You, or otherwise under Your possession or control.  This request shall include all documents and communications concerning the storage, moving, or removal of counterfeit or genuine ZIG-ZAG® Cigarette Paper Products.

5.      Documents sufficient to identify the location(s) and manner(s) in which You store records (hardcopy or electronically stored) related to ZIG-ZAG® Cigarette Paper Products, including but not limited to: warehouses, storage facilities, residences, businesses, or vehicles; or on computers and other computing devices, computing networks/servers/drives, or "cloud computing" systems, etc.

6.      All documents and communications concerning the importation of ZIG-ZAG® Cigarette Paper Products.

7.      All documents and communications concerning ZIG-ZAG® Cigarette Paper Products between You and any of the other defendant(s) in the above-captioned action.

<u>Exhibit A: Definitions</u>

[No modifications.]

<u>Exhibit B: Instructions</u>

[No modification to Paragraphs 1-7.]

21

8.      The time period applicable to these requests is the immediately preceding 24 months.

In addition, Plaintiffs' request for leave to subpoena third-party DHL prior to the FRCP 26(f) conference is denied with leave to renew should additional, relevant information become available.

**Plaintiffs' counsel shall serve this Order on each Defendant and file proof of service within three days of the date of this Order.**

**SO ORDERED.**

Dated:  Brooklyn, New York
            October 4, 2013

                                        _____/s/_____
                                        VERA M. SCANLON
                                        United States Magistrate Judge